UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS RECEIVED

JUN 1 9 2015
6-19-15
THOMAS G BRUTON
CLERK, U S DISTRICT COURT

JOHN . P. TUCKER
132

                        )
                        )
                        )
                        )
                        )
                        ,
                        )
    Plaintiff(s),        )
                        )
        vs.              )
                        )          1:15-cv-05479
                        )          Judge Matthew F. Kennelly
  LORETTO   HOSPITAL    )          Magistrate Judge Jeffrey T. Gilbert
                        )
                        ,
                        )
                        )
                        )
                        )
    Defendant(s).        )


## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a pro se plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1. This is a claim for violation of plaintiff's civil rights as protected by the Constitution and
   laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2. The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3. Plaintiff's full name is _____ JOHN . P. TUCKER _____.

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

1

4.   Defendant, ___LORETTO HOSPITAL___, is
     (name, badge number if known)

☑ an officer or official employed by ___NURSING SUPERVISOR,___
     (department or agency of government)
___Loretto Hospital___ or

☐ an individual not employed by a governmental entity.

***If there are additional defendants, fill in the above information as to the first-named
defendant and complete the information for each additional defendant on an extra sheet.***

5.   The municipality, township or county under whose authority defendant officer or official

     acted is _____. As to plaintiff's federal

     constitutional claims, the municipality, township or county is a defendant only if

     custom or policy allegations are made at paragraph 7 below.

6.   On or about __8 / 09 / 2014__, at approximately __3:45__ ☑ a.m. ☐ p.m.
            (month,day, year)

     plaintiff was present in the municipality (or unincorporated area) of ___Loretto___

     ___Hospital___, in the County of ___Cook___,

     State of Illinois, at __645 South Central Avenue, Chicago__
                    (identify location as precisely as possible)
     ___IL 60644___

     when defendant violated plaintiff's civil rights as follows ***(Place X in each box that
     applies)***:

     ☐   arrested or seized plaintiff without probable cause to believe that plaintiff had
         committed, was committing or was about to commit a crime;
     ☐   searched plaintiff or his property without a warrant and without reasonable cause;
     ☐   used excessive force upon plaintiff;
     ☐   failed to intervene to protect plaintiff from violation of plaintiff's civil rights by
         one or more other defendants;
     ☐   failed to provide plaintiff with needed medical care;
     ☐   conspired together to violate one or more of plaintiff's civil rights;
     ☑   Other:
         took a negative photo or picture of
     Me without my consent thereby invading my
     right to privacy and amendment right
     and used the picture as an evidence
     against me which resulted in my
     termination after working for almost
     ten years.

7. Defendant officer or official acted pursuant to a custom or policy of defendant

   municipality, county or township, which custom or policy is the following: (*Leave blank*

   *if no custom or policy is alleged*): Nursing Supervisor

   Violated the hospital Policy by

   taking my picture illegally with

   her cell phone.

8. Plaintiff was charged with one or more crimes, specifically:

   Sleeping on the job after

   using my own picture to encriminate

   me and I was terminated.

   Also other employees caught sleeping on

   the job are still work for Loretto Hospital

   but as for me I was terminated

9. (*Place an X in the box that applies. If none applies, you may describe the criminal*
   *proceedings under "Other"*) The criminal proceedings

   ☐ are still pending.

   ☐ were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

   ☑ Plaintiff was found guilty of one or more charges because defendant deprived me of a

   fair trial as follows the illegal evidence (my

   picture) which was obtained without my

   (or See) was used against me. Also, no break

   ☐ Other: was given to me the job was

   cold and I was work under a

   poor condition. Secondly, I was

   entrapped by

   Supervison

   [1]Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent
   may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the
   conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

   3

10. Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

On the 8th September, 2014, I worked my usual shift of 3-11 shift. And at 11:00 pm, I was about to go home and the charge nurse, Jessica asked me to work the 11-7 shift per nursing supervisor request Juliane. I told both the charge nurse and nursing supervisor that I was tired after working by my self from 9:00 pm to 11:00 pm, and that I needed to go home. But the nursing supervisor kept begging me to stay because there was no body to work that night. And after agreeing to stay, the same supervisor, Juliana sneaked into the room and took my picture without my consent and whose behavior she was not supposed to use the picture

11. Defendant acted knowingly, intentionally, willfully and maliciously. against me and others yes defendant acted willfully and maliciously, had me terminated

12. As a result of defendant's conduct, plaintiff was injured as follows:

I was terminated the following day without just cause even though no break was given to me, entrapped and my picture was taken illegally.

13. Plaintiff asks that the case be tried by a jury. ☑ Yes ☐ No

4

14.    Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such

as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy,

and/or any other claim that may be supported by the allegations of this complaint.

**WHEREFORE,** plaintiff asks for the following relief:

A.    Damages to compensate for all bodily harm, emotional harm, pain and suffering,

loss of income, loss of enjoyment of life, property damage and any other injuries

inflicted by defendant;

B.    X *(Place X in box if you are seeking punitive damages.)* Punitive damages

against the individual defendant; and    Loretto Hospital

C.    Such injunctive, declaratory, or other relief as may be appropriate, including

attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: _____

Plaintiff's name *(print clearly or type)*: JOHN PHILIP TUCKER

Plaintiff's mailing address: 1325 BRUMMEL STREET

City EVANSTON    State IL    ZIP 60202

Plaintiff's telephone number: 224 420 - 9309

Plaintiff's email address *(if you prefer to be contacted by email)*: SLeone Vending

Cupco @ yahoo.com

15.    Plaintiff has previously filed a case in this district.  ☐ Yes ☑ No

*If yes, please list the cases below.*

*Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff. An additional signature page may be added.*

5

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: John Tucker
c/o Jonathan Ksiazek
Ed Fox and Associates
300 W. Adams
Suite 330
Chicago, Illinois 60604-2505

From: Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

RECEIVED

BY: ..........................

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2014-06531 | Victoria H. Shealey, Investigator | (312) 869-8079 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman* 3/20/15

Julianne Bowman,
Acting District Director

(Date Mailed)

Enclosures(s)

cc: c/o Michael G. Cleveland
Vedder Price
222 N. LaSalle
Chicago, IL 60601

# ILLINOIS DEPARTMENT OF
# Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

October 27, 2014

Mr. John P. Tucker
1325 Brummel Street, 1st Floor
Evanston, IL 60202

**John P. Tucker vs. Loretto Hospital, Control No. 151023-012**

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. **After the EEOC issues its findings**, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC' s findings by either of the following methods:

**By Mail:** Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

**In Person:** Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records.

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings. Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings. Your failure to timely *provide the EEOC's findings to the Department will result only in the Department closing your file. **This process does not affect the investigation of your charge at EEOC.** If you do not wish to proceed with the Department, you do not need to take any further action.*

*This letter **does not apply** to any settlement of this charge the parties have made with the EEOC.*

**If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.**

ILLINOIS DEPARTMENT OF HUMAN RIGHTS

**CC Loretto Hospital**
**645 South Central Ave.**
**Chicago, IL 60644**

*EEOC 30  Rev: 12/11*

Dept. of Human Rights
INTAKE UNIT

APR 20 2015

RECEIVED

By:

one Tel 224)420-9309

el Tel 872)239-9031

1325 Brummel Stree

Evanston IL 6020:

20th April 2015

The Human Right
Department
100 W. Randolph Street,
Chicago IL

Dear Sir/Madam
John Tucky V Loretto
Hospital.
Case No 440-2014-0653

I will like you
to investigate this matter.

Thanks

John p Tucky

Dept. of Human Rights
INTAKE UNIT

APR 20 2015

RECEIVED

By:

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
EEOC National Toll Free: (800) 669-4000
EEOC National TTY: (800) 669-6820
Chicago Direct Dial: (312) 869-8000
Chicago TTY: (312) 869-8001
Mediation Fax: (312) 869-8060
Mediation Unit: (312) 869-8052

December 5, 2014

Ms. Amy Coleman
Human Resources Generalist
Loretto Hospital
645 South Central Ave.
Chicago, IL 60644

**Re:** **Tucker v. Loretto Hospital**
EEOC #: 440-2014-06531

Dear Ms. Coleman:

Please be advised that because Respondent objected to mediation or failed to respond to EEOC's inquiry concerning mediation in the above-referenced Charge of Discrimination, the charge will now be forwarded to an enforcement unit for investigation. If Respondent has already submitted its response to the Charge and its evidentiary support, Respondent need not take any further action until after it is contacted by the EEOC investigator.

If Respondent has not submitted a position statement, then Respondent is required to submit its response to the Charge and its evidentiary support within forty (40) days of the date the Charge was received by the EEOC. The deadline for Respondent to reply to the Charge is stated in the "Notice of Charge of Discrimination" (Form 131) which accompanied the Charge of Discrimination. If the due date in the "Notice of Charge of Discrimination" has passed, Respondent's response to the Charge and evidentiary support are past due. In that case, Respondent must submit its response to the EEOC representative identified at the bottom of the "Notice of Charge of Discrimination" immediately.

If you have any questions, please contact the Commission representative named on the "Notice of Charge of Discrimination."

Sincerely,

*Julianne Bowman*

Julianne Bowman
District Director (Acting)

cc      Mr. John Tucker
        1325 Brummel Street, 1st Floor
        Evanston, IL 60202

03-30- 15 13:49 FROM-                                             T-184   P0001/0001 F-898



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220

FILE REVIEWS FAX: (312) 869-8220

Mr. Jonathan R. Ksiazek, Esq.
Ed Fox & Associates
300 W. Adams Street, Suite 330
Chicago, Illinois 60606

**RECEIVED MAR 30 2015**

Re: John Tucker v. Loretto Hospital
EEOC Charge Number: 440-2014-06531

Dear Mr. Ksiazek:

I am in receipt of your written request for a copy of the file referenced above. **IF YOU ARE THE CHARGING PARTY AND HAVE ASKED FOR DOCUMENTS FROM YOUR CHARGE FILE BEFORE YOU HAVE FILED A LAWSUIT BASED ON YOUR CHARGE, BY ACCEPTING THESE DOCUMENTS YOU AGREE THAT YOU WILL USE THEM ONLY IN CONNECTION WITH CONTEMPLATED LITIGATION AND WILL ONLY SHOW THEM TO PERSONS IN A PRIVILEGED RELATIONSHIP, SUCH AS A SPOUSE, CLERGY, OR MEDICAL, FINANCIAL OR LEGAL ADVISOR.**

Also, please sign this letter at the bottom indicating that you agree to pay ALOHA DOCUMENT SERVICES for copying costs. After we have received this signed and dated form from you and had an opportunity to review the file, we will send the file to the copy service. **IF A COMPLAINT HAS BEEN FILED IN FEDERAL DISTRICT COURT, PLEASE PROVIDE A COPY OF THE FIRST FEW PAGES OF THE COMPLAINT,** SO THAT EEOC CAN DETERMINE IF THE COMPLAINT WAS FILED BASED ON THE CHARGE, if you have not already done so.

If we do not receive this signed form letter within 30 days of the date of this letter, the Commission will assume that you no longer wish a copy of the file.

Date: March 26, 2015

*Sylvia Bustos*

Sylvia Bustos
Records Disclosure Coordinator
sylvia.bustos@eeoc.gov
Phone: 312-869-8084          Fax: 312-869-8220

(PLEASE CHECK ONE)

_____ I do not choose to review the file before it is copied.
-or-
_____ I want to review the file before it is copied.

If you wish to review the file, review is *by appointment only*. You will be contacted to schedule an appointment; please be advised that you must bring picture identification with you for access to the office.

I agree to pay Aloha Document Services for copying the documents requested in the file and I understand that I will not be charged more than fifteen (.15) cents per page.

Date: 3/30/15          Signature _____          312-345-8877
                                                         Phone number (with area code)

This information is being given to you to help you decide whether your employment problem can be handled by the United States Equal Employment Opportunity Commission (EEOC). The EEOC was created by Congress to investigate allegations of employment discrimination engaged in by private employers, public state and local governments, labor unions and employment agencies. The EEOC can only investigate allegations of employment discrimination because of one or more of the reasons listed below:

Your race,
Your color (darkness or lightness of skin),
Your sex,
Your religion,
Your national origin,
Your age (if you are 40 or older), or
Your disability (includes employer's belief that you are disabled),
Your genetic information (acquiring or use of)
Opposing or protesting an act violating one of the laws enforced by EEOC,
Participating in an investigation or proceeding relating to one of the laws enforced by EEOC,
Associating with someone protected by one of the laws enforced by EEOC.

Some of these terms may have different meanings under the laws we enforce than elsewhere. EEOC can provide you with information regarding the meaning of the terms concerning your situation.

The EEOC **does not** accept complaints of discrimination against the Federal Government. Such complaints must be filed with the EEO office of the agency alleged to have engaged in discrimination.

The EEOC **does not** investigate charges alleging unfairness unrelated to race, color, sex, religion, national origin, age or disability.

The laws EEOC enforces against employment discrimination based on race, color, religion, sex, national origin, and disability require that an employer must employ 15 or more employees, and a charge must be filed within 300 days of the alleged discriminatory act.

The law that prohibits employment discrimination against persons 40 years of age or older requires that the employer must employ 20 or more employees, and a charge must be filed within 300 days of the alleged discriminatory act.

A law that prohibits discrimination based on sex in the payment of wages for substantially equal work, requires that a lawsuit must be filed within two years of the alleged discriminatory act. The employer must employ at least one employee other than the employee complaining of discrimination. A charge may be filed within the same two year period but is not required.

EEOC accepts charges of discrimination from the public and depending on the circumstances, may take one or more of the following actions regarding a charge:

1. Investigate to the extent EEOC deems necessary to determine whether illegal employment discrimination probably has occurred;

2. Attempt to work out a settlement of the dispute between the individual who filed the charge (Charging Party) and the organization accused of employment discrimination (Respondent); or,

3. Provide the Charging Party with a notice which permits him/her to sue the Respondent.



| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2014-06531 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. John P. Tucker | (224) 420-9309 | 03-03-1959 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1325 Brummel Street, 1st Floor, Evanston, IL 60202 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| LORETTO HOSPITAL | 500 or More | (773) 854-5320 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 645 South Central Ave, Chicago, IL 60644 | | |

| Name | No Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN | Earliest          Latest<br>09-09-2014 |
| ☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about November 7, 2004. My most recent position was Mental Health Specialist. On or about September 9, 2014, I was discharged.

I believe I was discriminated against because of my national origin, Sierra Leonean, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

OCT 0 2 2014

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Oct 02, 2014 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

Tel 312) 869-8010

# LORETTO HOSPITAL
## DISCIPLINARY ACTION FORM – SEIU HCII

Employee Name __John Tucker__    Position/Title __MHS__

Department __Behavioral Health__    Date __September 9, 2014__

**Disciplinary Action:**

☐   **Oral Reprimand**

☐   **Second Written Reprimand**

☐   **Suspension**

☒   **Discharge**

I.    Description of Incident: (describe the problem with relevant dates & details; identify the policy, rule or standard violated.)

On Tuesday, September 9, 2014, at approximately 0400, you were observed sleeping by the Administrative Supervisor on the 8th floor Addictions Unit while on duty. This behavior is considered a negligent and willful act that is detrimental to patient care, customer service and hospital operations per HR Policy 2412 – Employee Discipline and Conduct.

II.    Identify consequences of repeat violations or continued poor performance:
Sleeping on duty constitutes job abandonment and warrants immediate termination.

List previous disciplinary actions and dates:

III.    Employee Comments: Employee indicates he was meditating, listening to PRAISE SONG. States he had blanket on because he was extremely cold. No one Relieved FOR BREAK.

IV.    Union Steward Requested:  ✓ Yes  ____ No

Employee's signature below indicates the above disciplinary action was discussed with the employee and a copy of same was given to the employee.

| Employee Signature | Date | Jerome Phillips  9/9/14 |
|---|---|---|
| | | Department Manager  Date |
| _(signature)_  09/09/2014 | | |
| Supervisor's Signature  Date | | Administration  Date |
| _(signature)_  9/9/14 | | |
| Witness (Required in the event employee refuses to sign) Date | | Human Resources  Date |

## LORETTO HOSPITAL

## POLICY

| EFFECTIVE DATE: 1/96 | SECTION: Management of Human Resources<br><br>TITLE: Employee Discipline and Conduct | POLICY NUMBER 2412 |
|---|---|---|
| REVISIONS: 3/99 1/01 3/05 | AUTHORIZED BY:<br><br>_Steve Drucker_     Date _3/05_<br>Steve Drucker<br>President | PAGE 1 of 7 |

### PURPOSE

To ensure that all employees are fully aware of the standards of conduct expected of them and are treated fairly and uniformly if they violate these standards of conduct. Loretto Hospital has established a system of progressive discipline.

### POLICY STATEMENT

Employees who participate in a collective bargaining agreement recognized by the Hospital are also subject to the terms of this policy. Where there are differences between this policy and the terms of the collective bargaining agreement, the agreement will govern.

Progressive discipline refers to the concept of increased severity in disciplining employees who repeatedly violate Hospital rules while performing work for the Hospital or while on Hospital premises. Written reprimands are given for initial, minor infractions of the Hospital rules; if violations are repeated or different more serious violations occur, progressively harsher discipline is imposed.

Loretto Hospital shall utilize a progressive disciplinary action which shall include the following levels of formal disciplinary action:

**First written reprimand** (verbal reprimand for bargaining unit employees) is the first level of formal discipline. The manager should point out the infraction and make sure the employee understands the rules, policies, and expectations. It should include recommendations on how the employee is expected to meet expectations in the future.

## LORETTO HOSPITAL
## POLICY

| EFFECTIVE DATE: 12/03 | SECTION: Hospital Wide | POLICY NUMBER: 2319 |
|---|---|---|
| REVISION 2/05, 1/08 | TITLE: Use of Cellular Telephones in the Facility | |
| | ======================================= | =========== |
| | AUTHORIZED BY: | PAGE 1 of 2 |
| REVIEWED 3/06, 1/08 | *w. long*          *1/08* _Date_ | |
| | W. Suszek | |
| | Safety Committee Chairperson | |

PURPOSE:

To provide for a safe environment in patient care areas by avoiding potential electromagnetic interference risk to sensitive medical equipment. This policy shall define restricted areas of the hospital for the use of cellular telephones.

POLICY STATEMENT

Employees who participate in a collective bargaining agreement recognized by the Hospital are also subject to the terms of this policy. Where there are differences between this policy and the terms of the collective bargaining agreement, the agreement will govern.

Loretto Hospital will minimize the risk associated with this phenomenon by limiting the use of cellular telephones in Patient Dependent on Equipment locations [PDE]. A PDE location is defined as an area, which has equipment attached to patients where, if the equipment malfunctions, could cause or contribute to injury of the patient. The use of cellular telephones is prohibited in the following designated Patient Dependent on Equipment locations. Exceptions to this are hospital issued cell phones used by Nursing.

- Patient Rooms
- Surgery / Recovery Units
- Intensive Care Units
- Emergency Department
- Elevators

Due to the potential violation of patients' rights from a medical and health information standpoint, taking pictures with cell phones is strictly prohibited.

**Second written reprimand** is used after a first written reprimand (verbal reprimand for bargaining unit employees) fails to change conduct or performance. A second written reprimand may lead to a more serious discipline, up to and including discharge if the problem is not corrected.

**Suspension without pay** for a given period of time can be given:

- As a disciplinary measure either for a serious first-time offense or as part of progressive discipline either after or in lieu of discharge.

- During an investigative period when discharge or disciplinary suspension may result. Suspension under these circumstances shall be viewed as "suspension pending investigation." A suspension pending investigation is not disciplinary in nature. Whether or not an employee will be paid for time off during a suspension pending investigation depends on the outcome of the investigation. If the investigation reveals that discipline or termination is not justified, the suspended employee shall be returned to duty immediately and paid any wages lost during the suspension. Further, all documentation relating to the suspension shall be removed from the employee's personnel file.

Disciplinary and investigative suspensions are usually limited to three consecutive work days; investigative suspensions may require additional time to complete an investigation and obtain approvals. All employee benefits remain in effect.

**Discharge** is appropriate for certain first-time offenses or after previous efforts at progressive discipline have failed. The manager must consult with the Associate Vice President of Human Resources before discharging an employee.

The above steps may be entered into at any stage, up to and including suspension and discharge, depending on the severity of the infraction and/or Hospital policy violated.

Disciplinary actions that will directly result in suspension or discharge must be reviewed by the Associate Vice President of Human Resources and the appropriate Vice President.

The discipline policy applies to all employees. New employees in the probationary period are subject to this policy. However, management need not take these employees through the entire course of progressive discipline prior to termination.

Violation of Hospital rules and regulations are classified as:

- Critical offenses
- Major offenses
- Serious offenses

Employee Discipline and Conduct

2

- Minor offenses

Normally, discipline should be administered by the employee's immediate supervisor or a higher level supervisor in the same management chain.

Violations of different rules are cumulative.

All disciplinary actions, up to including termination, shall be recorded on the Disciplinary Action Form. Documentation shall include:

a. A description of the problem and relevant dates and details
b. Identification of the policy, rule or standard violated.
c. Consequences of repeat violations or continued poor performance.

Employees shall receive disciplinary actions within a reasonable period from the time of the infraction (within 30 days). However, circumstances preventing a timely issuance of a disciplinary action shall not be cause for not taking action.

Employees' refusal to sign a Disciplinary Action Form shall be witnessed by both the Manager and a witness and so noted on the form.

Hospital recognized bargaining unit employees shall be offered union steward representation.

An employee shall receive a copy of all official disciplinary actions issued to him/her.

An employee may appeal any disciplinary action by filing a grievance – see Grievance Policy/Procedure.

Disciplinary actions issued within a twelve month period from the time of the first infraction shall be considered for purposes of further disciplinary action. Exceptions to the twelve month time period shall include disciplinary actions issued which have resulted in lost time (i.e., suspensions). These disciplinary actions may be considered when serious infractions beyond the twelve month period occur.

For the purposes of this policy, a year is defined as a consecutive, rolling, 12-month period.

**Special Resignation Situations:**

The following circumstances constitute a voluntary resignation by an employee; however, the Hospital reserves the right to declare infractions as such as grounds for discharge. While the supervisor must initiate the termination paperwork, they are not a cause for progressive discipline:

- An unreported absence for three consecutively scheduled work days.
- Failure to return after a leave of absence.
- Job abandonment by leaving Hospital premises without written permission of their supervisor/manager.
- Refusal to accept an offer of same or comparable position (which makes reasonable accommodation as may be required by law) when released to return to work after illness, injury or family/medical leave.

## Employee Conduct

### Critical Offenses

*Critical offenses* are misconduct or violations of Hospital rules which may justify immediate termination. The employee shall be suspended immediately (usually no more than three work days) while the incident is being investigated by Hospital management. Examples of critical offenses are:

1. Dishonesty, theft, cheating or fraud.
2. Using another employee's I.D. card to swipe that person "in" or "out" for payroll purposes or giving your I.D. card to another person for the purpose of swiping you "in" or "out" for payroll purposes.
3. Employees photocopying their I.D. badges and/or making a computer copy of the I.D. badge bar code.
4. Threatening, intimidating or coercing patients, customers, employees or others.
5. Unauthorized possession of weapons, firearms or explosives on premises.
6. Conviction of a felony while employed.
7. Negligent or willful damage of Hospital equipment or property.
8. Physical or sexual assault, which may include offensive touching of any person during working hours or on Hospital premises.
9. Deliberate or negligent omission, or falsification, of significant information on the employee application, time records/reports, Hospital records, benefit forms, or other Hospital related documents or reports.
10. Use, possession, sale or impaired performance due to the use of intoxicating, illegal or controlled substances of any kind on Hospital property while on work time.
11. Refusing to submit to drug testing when reasonable cause exists regarding the use of a controlled substance.
12. Negligent or willful acts or conduct detrimental to patient care, customer service or hospital operations or which result in neglect or abuse of any patient or others.
13. Refusal to perform assigned duties.
14. Misuse or unauthorized disclosure of confidential information, including unauthorized access or copying Hospital records (including patient medical charts or personnel files),

Employee Discipline and Conduct

4

unauthorized release of customer information or other Hospital data.

15. Sleeping on the job constituting abandonment of duty.
16. Willful violation of safety standards or other standards, which compromises the physical well being of patients and employees or which could result in major damage to equipment. Includes smoking in all buildings and/or areas where combustible/flammable materials are stored, failure to wear seatbelt while driving Hospital vehicles and failure by driver to ensure that others in Hospital-owned vehicle are wearing seatbelts.
17. Absence without notice for three consecutive scheduled work days.
18. Unauthorized recording (audio and/or video) of Hospital business.
19. Other extreme instances of improper conduct not specifically listed.

## Major Offenses

*Major offenses* are lesser violations than critical offenses, but may require disciplinary suspension from work for a first offense (no more than three work days). Examples of major offenses are:

1. Gambling on Hospital premises.
2. Refusal to work, without a good reason, when needed in times of emergency call-ins, disaster, etc.
3. Willful misconduct.
4. Willful misuse of computerized applications controlled by the Director, Information Systems.
5. Verbal abuse.
6. An act of harassment.
7. Absent without notice one day.
8. Soliciting and/or accepting money, loans, tips or financial remuneration of any kind from patients, family members, vendors or customers.
9. Other major instances of improper conduct not specifically listed.

## Serious Offenses

*Serious offenses* do not justify immediate discharge or suspension, but require disciplinary action. Examples of serious offenses are:

1. Performing work other than Hospital assignments during working hours.
2. Failure to use safety devices; failure to comply with safety precautions.
3. Failure to report an on-the-job accident.
4. Interfering with, or distracting, an employee at work which does not constitute harassment.
5. Eating food prepared and intended for patients or for cafeteria sale.
6. Use of vile, intemperate language.

7. Possession of another employee's ID card and/or misuse of own ID card.
8. Posting, altering or removing any matter on bulletin boards on Hospital premises unless specifically authorized to do so.
9. Failure to follow Hospital smoke-free policy.
10. Removal of Hospital property from premises without written authorization.
11. Other serious instances of improper conduct not specifically listed.
12. Fails to swipe in and/or out when leaving building for lunch.

**Minor Offenses**

*Minor offenses* are violations of Hospital rules which require disciplinary action in the form of written counseling. Examples of minor infractions are:

1. Loitering.
2. Failure to report to work or return from breaks on time, which does not constitute tardiness.
3. Occasional carelessness.
4. Failure to perform assigned duties in appropriate manner or at assigned times.
5. Failure to wear prescribed uniform or apparel or adhere to the standards of dress, hygiene or grooming.
6. Attending to personal affairs on Hospital time, including personal phone calls or visitors, without permission.
7. Creating or contributing to disorderly or unsanitary conditions.
8. Horseplay, running, scuffling or throwing objects of any kind on Hospital property.
9. Taking breaks or eating in patient rooms or unauthorized areas.
10. Failure to observe parking and traffic regulations on Hospital premises.
11. Actions or attitudes which adversely affect Hospital operations, patients or others.
12. Other minor instances of improper conduct not specifically listed.

## RESPONSIBILITY/AUTHORITY

| | |
|---|---|
| Employee | Responsible to adhere to the policy |
| Department Director/ Manager/Supervisor | Responsible for ensuring that employees follow the policy. |
| AVP of Human Resources | Responsible for enforcement of the policy. |
| Vice President | Responsible for monitoring supervisory procedures to ensure that progressive discipline is communicated and applied equally to all employees. |

Employee Discipline and Conduct

Responsible for overall compliance with Policy Guidelines and recommending any Policy exception to the President/CEO.

President/CEO

Authority to make exceptions to Policy.

# LORETTO HOSPITAL

## STATEMENT OF JOHN TUCKER

I was asked by charge nurse Jessica to work on the 8th floor last night per supervisor's Julianna request. I worked on the 8th floor by myself with thirteen patients and I was not given any break since that is the usual practice. And at 03:45 Am I decided to pray to my Lord, I turned on the computer to a prayer line and I was listening to the prayer called Praise my Lord, double double while doing this, I decided to mediate and it was during this time the nursing supervisor Juliana and a Dietitian came in and took my picture without my consent and thereby invading my privacy, my Amendment Right. Now, administration is using this picture to terminate my employment without any prior warning that I___

NEWER POLICY

## LORETTO HOSPITAL
## POLICY

| EFFECTIVE DATE: 12/03 | SECTION: Hospital Wide | POLICY NUMBER: 2319 |
|---|---|---|
| REVISION 2/05, 1/08, 12/14 | TITLE: Use of Electronic devices in the Facility | |
| Reviewed 3/06, 1/08 | AUTHORIZED BY: Sonia Mehta, MD President/CMO     Date: | |

## PURPOSE:

To provide for a safe environment in patient care areas by avoiding potential electromagnetic interference risk to sensitive medical equipment. Non-work related electronic devices are a distraction for safe care of our patients. In order to provide vigilance necessary to provide safe care and high quality care to the patients at Loretto Hospital, personal electronic devices are prohibited in patient care areas. This policy shall define restricted areas of the hospital for the use of cellular telephones.

## POLICY STATEMENT

Employees who participate in a collective bargaining agreement recognized by the Hospital are also subject to the terms of this policy. Where there are differences between this policy and the terms of the collective bargaining agreement, the agreement will govern.

1. Devices that are prohibited from use in patient care areas of units/departments
   - Cellular phones or messaging devices
   - Portable electronic games
   - Personal Laptop computers/ tablets or E Readers
   - Music, MP3 or video players
   - Head phones, headsets or Bluetooth devices
   - Video Cameras
   - Any other non-work related electronic device

2. Due to potential violation of patient's rights from a medical or health information standpoint, taking pictures with cell phones is strictly prohibited

3. All above mentioned devices will be secured in caregiver's lockers during assigned work

# Loretto Hospital is Cellular Friendly

"Please use cellular telephones with concern and privacy of others"

February 17, 2005

To: Physicians
    Department Heads

From: Willie Suszek
      Chairman, Safety Committee

Subject: Cellular Telephones

With cellular telephones becoming more pervasive in daily life, Loretto Hospital recognizes this and will give doctors, patients and visitors more freedom to use this wireless instrument. However, photographs may not be taken with cellular telephones equipped with camera features, without prior Administrative approval.

Effective with the memorandum, cellular telephones may be used in non-clinical areas of the hospital such as corridors, entrance lobbies, cafeteria, waiting rooms and outpatient areas by doctors, patients and visitors.

However, the ban on use of cellular telephone in patient care areas will remain in effect because they can produce electromagnetic radiation. Cellular telephones cannot be used when in close proximity [five feet or less] to patient monitors and other sensitive medical equipment.

Hospital policy defines patient-care areas as patient rooms, surgery/recovery units, intensive care units and emergency department.

When using cellular telephones in the hospital, please make sure that you will not disturb others, especially our patients. The mobility of cellular telephones makes is possible to move to a private place, if your conversation may offend/disturb others or does not concern them. It is also suggested, that anyone using a cellular telephone employ discretion when placing/receiving calls and making certain that patient confidentiality is preserved.

Employees shall keep cellular telephones in the off position while on duty and inpatient care areas. Hospital policy number 2432/HR-8572[Personal Telephone Calls To/From Employees] shall remain in place outlining additional guidelines for personal telephone use by employees. Employees may only use cellular telephones while on break/lunch periods.

You may contact me at extension 5358 with any questions/comments.

U.S

EVANSTON MPO
EVANSTON
6020159
1615400204
09/29/2014 (800)275-8777 08:59:56 AM

============ Sales Receipt ============

| Product Description | Sale Qty | Unit Price | Final Price |
|---|---|---|---|
| Vacation/Hold Mail Pickup | | | $0.00 |
| CHICAGO IL 60644-5059 Zone-1 First-Class Mail Letter 0.80 oz. | | | $0.49 |
| Expected Delivery: Wed 10/01/14 Return Rcpt (Green Card) | | | $2.70 |
| @@ Certified | | | $3.30 |

USPS Certified Mail #:
70142120000313843904

========
$6.49

Issue P

========
$6.49

Total:

Paid by:                              $6.49
Cash

@@ For tracking or inquiries go to
USPS.com or call 1-800-222-1811.
***********************************
***********************************
BRIGHTEN SOMEONE'S MAILBOX. Greeting
cards a       ble for purchase at
select Post Offices.
***********************************
***********************************

In a hurry? Self-service kiosks
offer quick and easy check-out. Any
Retail Associate can show you how.

S SECTION ON DELIVERY

com®.
E

☐ Agent
☐ Addressee

Printed Name)          C. Date of Delivery

ress different from item 1?  ☐ Yes
delivery address below:      ☐ No

ail    ☐ Express Mail
l      ☐ Return Receipt for Merchandise
ail    ☐ C.O.D.

livery? (Extra Fee)          ☐ Yes

tions

7003 1384 3904

102595-02-M-1540

1. Sleeve Vending Cup 26th September, 2014
2. yahoo.com.


The Chief Executive
        Officer

Loretto Hospital
Chicago IL 60202


Dear Sir / Madam
                A Letter of Complain

                I write to inform you
that within 10 - 15 business days, I will be
instituting a Case in the United States
District Court against your hospital and its
supervisors — Julianne Mbuwa and mr
Ihie, nurse manager, 3.West, Behavioral Unit.
The reason being that on 9/8/2014 at
03:45 AM, your Supervisor Juliane came
a the eight flow where I was working and
took my picture with her cellphone

and Nurse Manager of 3 West
Processcy. Mr Able then Processed
picture or photograph on the internet
it a copy which he gave to mr
Jerome Phillips Director Behavioral
health. Mr. Jerome used the picture
s evidence to terminate my service
eventhough I told him that it was
saying meditating to my God. The
picture which they used in evidence
was wrongfully obtained and processed
on the internet without my consent
eventually leading to a breach of my right
to privacy while also interfered with
my fourth, fifth and ninette Amendment
rights of the United States Constitution.
The Union Stewert Jennip did file a
grievance with your Administration and
I called your telephone several times (
I ever spoke to your Secretary at one
ime) but it seems you ignored all of
s. So, you now have only few days
to address this matter as a family
otherwise the matter will proceed to

I look forward to hear of from
you.

Thanks

John P Tuely
Formerly Mental Health specialist
(the Vest guy who spoke to you
last about his missing wedding
right while doing CPT)

CR Notes

John Tucker v. Loretto Hospital  440-214-06531

Susan Smith, Investigator

Oct 2, 2014

PCP hired Nov 7, 2014 – in 2008 – took 6-7 months off for heart problems – and then returned to work. Other than that – no breaks.

PCP said no disciplinary actions during his whole employment. He always received good evaluations. PCP said Director, Jerome Phillips, PCP direct supervisor – been there a year now.

PCP said he is Sierra-Leone, West African.

Juliana Ndauwa (Nigerian – she was nationalized)

PCP said that he was terminated Sept 9, 2014 – for sleeping on the job – PCP said he was working on 8th floor by himself and no one else on floor to work with him – he said he was very cold. PCP said he was praying and put head back to remove evil around him – he had blanket on him because of cold. PCP said he put computer on with prayers. PCP said Julianne came in and took his picture on her phone and told him to go home b/c very tired. He was on overtime – they had no one – someone went home at 9pm b/c he had headache. PCP said he did not want to stay told them very tired – said to go up there.

PCP said he was not given a break – Julianna was suppose to schedule someone for break but did not. He was left up there all by himself.

PCP said this was the first time – said sleeping on the job. He said he was not but even if had been....

PCP said other Americans caught sleeping and they were only given verbal warning – not terminated. John Kelly (African American), Tammy Norwood (African American), Kena Olu (African American), and Sonia Morton (African American) – they were all caught sleeping on job. John was sleeping right under camera and Julianna caught him and only verbal warning.

Olaniyi Alli Belogun (from Nigeria but born in US) - male Nurse Manager – Assistant to Jerome Phillps, Director.

Belogun has gotten rid of 4 Africans – Timmy, Anduka, Margaret, Ruth – all Nigerians – and left African American

PCP said Sierra-Leone and Nigeria at war – regarding diamonds – some animosity between two areas.

PCP feels Juliana – did this to him b/c from Sierra Leone and b/c he got a lot of overtime – and she was jealous.

PCP said after took picture Alli-Belogun showed pictures to counselors and one Timmy Jones stood up for PCP.

PCP said he filed with union Jennie LNU – union steward – she is very angry for PCP and is trying to help him – grievance is still pending. Company does not want to pay attention to union. Jennie has additional information and would assist in any EEOC investigation.

PCP was advised of his right to file and the 300 day filing limit. PCP decided to file at this time. PCP checked race and national origin – he decided not to file on race – only national origin.

PRE-DETERMINATION INTERVIEW

From:VS
To; File
Jan. 15, 2015

**Charging Party:**John Tucker
**Respondent:** Loretto Hospital
**EEOC Charge:**    440-2014-06531

Informed CP he is contacted for a PRE-DETERMINATION INTERVIEW  to inform him that the evidence obtained during the investigation is  that he admits the infraction resulting in his discharge and a non-Sierra Leone staff was treated the same. Informed CP based on EEOC's limited resources and the evidence obtained during the investigation a finding of no violation will be recommended.  CP was advised he has five (5) days to submit additional information.

CP was advised that EEOC procedure is that EEOC management makes the final decision on additional information and whether evidence obtained supports a violation of law. CP was advised that if EEOC management determines there is no violation of law, CP will be issued a no violation letter of determination which document will also serve as his NRTS. CP was advised he will have 90 days from receipt of NRTS to file suit against the employer in Federal District Court, and if he does not file suit within this 90 days time  his right to sue  will be lost.

Position Statement Reviewed With Charging Party and Charging Party Rebuttal

From VS
To: file
Jan. 15, 2015

**Charging Party:** John Tucker
**Respondent:** Loretto Hospital
**EEOC Charge:** 440-2014-06531

## Position Statement

Discussed R's position with CP that wwas not discriminated against due to his national origin. CP was photographed sleeping on the job and discharged for sleeping on the job.

## Rebuttal

CP admitted the photograph in file of a man sleeping is CP. CP stated that he was not asleep but is instead meditating. CP admitted that meditating on duty is against policy. CP identified an American black, national origin, non-Sierra Leone , who was discharged for sleeping. CP alleges the employee sued R for photographing her without her consent and she got her job back.

# GRIEVANCE FORM
## SEIU HEALTHCARE ILLINOIS/INDIANA
### 2229 S HALSTED
### CHICAGO, ILLINOIS 60608
Telephone: 312.980.9000 FAX: 312-784-3179

DATE 9/9/14

NAME OF EMPLOYER  Loretto Hospital

Employee Name  _John Tucker_  Employee I.D. # _____

Job Classification  _MHS_  Home Phone # _____

Immediate Supervisor  _Jerome_  Department Name/Area _____

Union Steward/Rep.  _Jeanene Johnson_  Steward/Reps. _____
_Sherice Beuck_  Work Phone # _____

Nature of Grievance (include dates)  _John Tucker was terminated_
_without Just Cause_

Article and/or Rule Violated _____

Remedy Sought  _MADE whole_

Date Answered at Step 1 _____  Supervisor _____

**STEP II**

Date Submitted _____  Employee Signature _____

Steward Signature _____

Answer Step II

Date Answered _____  Dept. Head Signature _____

**STEP III**

Date Referred to Step III _____  Steward Signature _____

Received _____  Union Rep. Signature _____



# Note to Management:
# Loretto Is A Union Shop!

O ver the past few months, Loretto management has NOT been following our Union Contract! We understand that we have new management, but we need them to understand that this is a Union facility and it is their responsibility to learn how to work with us.

Some of the most common practices that have repeatedly been abused time and time again are as follows:

- Low census: Not following the order of retention by seniority by shift. This is basic language in a union contract. Abiding by this language is something that takes little effort to do.

- Union workers being low censused so that non-union employees can do their work is unacceptable.

Let management know that you want them to abide by our contract.



1) E.E.O.C REPRESENTATIVE HANDLING
THE MATTER

MRS VICTORIA SHEALEY
TEL 312) 869 - 8079

Email — Victoria.Shealey @ EEOC.GOV.

please NOTE :— Mrs Shealey Want me to send
her an email Before Wednesday 1/20/15
requesting for the right to sue document

Failing to request the right to sue document
the matter will proceed to EEOC Management
for decision making.

2) HEAD OF THE LORETTO HOSPITAL /
MENTAL HEALTH SPECIALIST UNION is

MISS BETH
TEL 312) 617 - 7905 · for more
information about the Union, please contact
miss Beth on the above telephone number

3J UNION STEWART / UNION REPRESENTATIVE
AT LORETTO HOSPITAL AND WHO FILED
THE GRIEVANCE WITH THE HUMAN
RESOURCE AT LORETTO HOSPITAL IS

MISS JENNING

TEL 773) 704 - 7045. For Copy
of the grievance and for more information
about people sleeping on the Job and still
Working for Loretto, please contact Jenning
at the above number.

4J PRECEDENT CASES OF PEOPLE
CAUGHT SLEEPING ON THE JOB

a) NICOL TULLOCK - MENTAL HEALTH
SPECIALIST whose picture was taken and
Sued Loretto Hospital for $200,000. In
2d for comment, please contact NiCol's
Attorney, MISS Jemelle's on TEl No 312)252
- 3085.

b) John Kelly, mental Health specialist
caught on Camera and was see by Nurse
Juliana is still working. EPI was caught
*1 a registered nurse

5th floor Employees at
Loretto Hospital (still working)

DAN the Monitor Tech
got Caught Sleeping.

Sabrina Monitor Tech
got Caught Sleeping.

Tammy Norwood the
CNA got Caught Sleeping

Kenya ~~the~~ a nurse got
Caught Sleeping

Laura a nurse got Caught
Sleeping

Mafan a nurse got Caught
l Donorris

Loretto Hospital

DR SONIA MEHTA

) EXECUTIVE
DIRECTOR | OFFICE —
TEL 773) 854 - 5000

NOTE: — A letter of complaint was sent
to her by certified mail.

HUMAN RESOURCE DIRECTOR

2) Formely := Amy.
I did complained to her on 9/18/2014
et 10:00 Am. but left facility on
9/19/2014. She promised to call for
a meeting between ~~between~~ myself
and Administration but she did not.
She however told me that "Loretto
do not have a policy that Says
Supervisors can take employees picture
or photo with their Personel Cellpho
for comment, you can reech Amy
resource Office

on: Tel No: — 773) 854 -5042

3) Behavior Department's Director
— Mr Jerome phillips,
he signed my discharged paper but
he advised me to pursued the matter
because there were some issues
involved in my termination that were
not cleared enough.
To reach him for comment, you dial
773) 854 – 5320 and ask to be
connected with Jerome phillipe.


4) Nurse Manager for three West
→ MR Olaniqi Alli – Baloqun
( a Nigerian) processed my picture on
the internet without my permission,
took the picture to Mr Jerome phillips
and push for my termination. At the
meeting for my termination, Mr Olaniqi
will to committee that Supervisors have

The right to take employees pictures
while discharging their Supervisory
duties. I then asked him for a copy
of Loretto Hospital Policy where it stipulate
That Supervisors can take employees
photos or pictures even when it interferes
With the right to Privacy. He was unable
to answer further and he did not give
me the policy. For comment, you
can reach Mr Afaniyi Ali Balogun
or Tel No:- 773) 854 - 5320 or
773) 854 - 5310.

5) Nursing Supervisor:—
Mrs Juliana Ndaywa — This is a
nigerian Lady who took my picture with
her cellphone on 9/8/14 at 03:45 Am
without my consent, feed it to her
nigerian brother, Mr. Afaniyi Ali Balogun,
nurse Manager who then use the picture
to ancrimnate me and had me terminated
I strongly believe that a kind of
Conspiracy resulted in my termination
between Juliana Ndaywe and Mr

Juliana, She was a nurse on the 5TH who became nursing Supervisor. And according to our Union Stewart, Mrs Jennie, She told me that Juliana herself used to sleep when She was a floor nurse. And ever since, She became nurse Supervisor, She always catch people sleeping on the job but she never say a word to them, maybe, because they are born Americans. One guy, an employee called John Kelly was caught by Juliana after a nurse called Jessica reported to nursing office that John Kelly was sleeping right under the camera but he was not terminated and is still working. And according to Jennie, Juliana did catch two other employees one in the Crisis office/Emmerly Room and the other on three West in the back office sleeping but she did not discipline these people. For further comment, you may reach:—
Juliana Ndayuwe on Tel 773) 854-5208. and Mrs Jennie on Tel

No: 773) 704 -7045. Mrs Jenny
will give you names of people that were
caught sleeping and not terminated and
are still working just because they are
Americans.

6] If you look into the Hospital
camera, you will surely find employees
Sleeping under the Camera while in
hallways, dayroom and nurses Station.
This is a common practice at Loretto
Hospital and Juliana being a nursing
supervisor will see these things and
turned a blind eye to them. Names
of some people sleep most often while
at work are   1) John Kelly mHS
             2] Jacque Kilonzo, mHS
             3) Maurice      mHS
             4) Ruth — RN
             5) Ola — RN
             6) Emmanuel Nduke mHS
             7) Beyond — mHS
             8) Rotimee -O. — mHS.
                Wale Pierson mHS

I do not wat to implicate my co-workers so please use these names only for informational purpose.

7] To find out more about people sleeping on Loretto Job, please contact the following people: —

#1] Mrs Jenny, Tel No 773) 704 - 7045

#2) Emmanuel — Tel 708) 469 - 7404

#3] Eric — Tel 312) 607 - 9111

#4] Rotimi — Tel (847) 490 - 0514

# 5] Samuel Banda — Tel 1 - 574 - 383 - 2211

6] Samuka — Tel 1 - 312) 388 - 8835

#7) Timmy Jones — Tel 773) 225 - 6135

8] Lynda Robinson, Tel 773) 449 - 8167

9] Bob Hunt — Tel 847) 626 - 8398

# 10] Harold, RH — Tel 773) 854 - 5320

11 Jessica, RH — Tel 773) 854 - 5310.

12 Margarett Tel 773) 317 - 8447

Case: 1:15-cv-05479 Document #: 1 Filed: 06/19/15 Page 45 of 118 PageID #:259

So taking into account all the above, I now feel Loretta Polly singled me out by letting their supervisor takes my picture with her cell phone, processed it on the internet, used it as evidence against me and have me terminated while on the other hand, when she see the Americans sleepy, she don't take their pictures or have them terminated. So, by Juliena singling me out base on my origin, she has descriminated me and has also invaded my right to privacy which in turn interferes with my 4th 5th and 9th Amendment rights, so, I want the EEOC investigate this matter.

Thank you

Sgn. p Tracey

above. This fee does not extend to a second trial and/or appeal proceedings and does not include any investigation, administrative, medical or litigation costs. Additional fees to be agreed upon by the parties shall cover any second trial or appeal.

5. Client is further advised that the fee based upon an hourly rate and/or the fee set forth in paragraph 1 above, may be greater than the recovery, if any, by the client. Client shall acknowledge agreement to this by his/her initials, here. ___̶P̶J̶___ .

6. Client will pay all costs in full when billed. Costs include all out-of-pockets expenses advanced by attorneys, including but not limited to, all litigation, administrative and investigation costs. Online research costs are billed at a rate of $ 1.50.00 per minute, per online session. Client hereby agrees that attorneys can expend whatever out-of-pocket costs as are reasonably necessary to litigate the case. This includes, without limitation, the following: postage, copy costs (.25 per page), fax, online research, long distance telephone calls, all court fees, deposition costs, expert fees and all other litigation expenses. Client is responsible to attorneys for any costs incurred in the litigation of the cause of action regardless of the outcome of the action. Further, client is hereby put on notice that if he/she loses the case he/she may be responsible for the opposing party's fee and costs.

**LIEN**

7. Attorneys shall have a lien upon the cause of action, any judgment obtained and the proceeds of any recovery for their fee and for any costs and expenses, which they have advanced in client's claim. Attorneys may withdraw at any time legally permissible upon written notice.

**SETTLEMENT**

8. Client and attorneys further agree that they will make no settlement without the approval of one another. Client is advised that the time spent on cases can be extensive, and that the client's attempt or desire to settle a case for less than its true value would cause the attorneys to take an unnecessary monetary loss on a case. Thus, the attorneys reserve the right to refuse to settle a case where it is not in the best interests of both the attorneys and the client.

9. It is agreed that attorneys have made no guarantee regarding the success of any claim or causes of action for which they are retained. Plaintiff has been advised and agrees that a rough initial estimate of the total value of the guess ranges from ___30K___ to ___100K___ , although there is no guarantee of this. Client acknowledges and agrees to this by his/her initials here. ___̶P̶J̶___

**MISCELLANEOUS**

10. Any related matters not expressly covered by this agreement such as defense of a counter-claim may be at an additional fee as agreed upon by client and attorneys.

11. Should client discharge attorneys, he/she agrees to reimburse attorneys immediately for all costs advanced and to pay attorneys a fee for the work they performed based on the relative amount of that work compared to any subsequent work done by others in processing the case to completion. This method will be used to measure the reasonable value of services provided. If

retainer.doc

attorneys have obtained an offer of settlement, the fee shall be, at the time of such offer as calculated in paragraph 1 above.

12.　In the event that attorneys settle client's claim and client cannot be reached by telephone or through the mails, client hereby grants to attorneys a Special Power of Attorney to sign his or her name to any release, draft, authorization or any other document issued or which may be necessary to settle client's claim. Client's name signed by attorneys shall have the same force and effect as if signed by client himself or herself.　Under such circumstances, attorneys agree to maintain a copy of the draft or check in payment of any settlement and also to maintain client's share of the proceeds of the settlement in the attorney's Trust Account.　Client hereby agrees to keep attorneys apprised of his/her current address and telephone number at all times.

13.　The client acknowledges that attorney _____ has referred this case and is entitled to a referral fee. This will not impact the fee paid by client.

14.　Client acknowledges that he or she fully understands the terms and conditions as contained in this agreement and receipt of a copy hereof.

DATED ___1/19/2015_____　　　　　_____
　　　　　　　　　　　　　　　　　　　CLIENT

DATED ___1/19/15_____　　　　　_____
　　　　　　　　　　　　　　　　ED FOX & ASSOCIATES

retainer.doc

# LORETTO HOSPITAL
## DISCIPLINARY ACTION FORM

**Employee Name** <u>John Tucker</u>   **Position/Title** <u>Mental Health Specialist</u>

**Department** <u>Behavioral Health</u>   **Date** <u>June 13, 2013</u>

**Disciplinary action:**

x☐ **First Written reprimand**    **Suspension without pay** ☐

☐ **Second Written reprimand**    **Discharge** ☐

**Description of incident: (describe the problem with relevant dates & details; identify the policy, rule or standard violated.)**

<u>Failure to comply with Tardiness Policy #2447</u>: ***"Any unexcused arrival at work seven (7) minutes past the established start of shift shall constitute an occurrence of tardiness." You were tardy*** 5/2, 5/5, 5/9, 5/13, 5/16, 5/17, 5/23, 5/24/13.

**Identify consequences of repeat violations or continued poor performance:**

Progressive discipline including second reprimand, suspension and discharge.

**List previous disciplinary actions and dates:**

**Employee Comments:** My *lateness* is due to *circumstances beyond by control*. On the *occasion I was involved in an accident — the bus was hit by another truck. And on another occasion, my family car broke* ↗

**Employee's signature below indicates the above disciplinary action was discussed** *way ↘* *noticed the car release.* **with the employee and a copy of the same was given to the employee.**

| | | | |
|---|---|---|---|
| _BR p Trckr_ | 6/20/13 | | |
| **Employee Signature** | **Date** | **Department Manager** | **Date** |
| _Jandu_ | 6/20/13 | | |
| **Supervisor's Signature** | **Date** | **Administration** | **Date** |
| | | | |
| **Witness** (required in the event employee refuses to sign) | **Date** | **Human Resources** | **Date** |

Human Resources Disciplinary Form

John Tucker
1325 Brummel Street
Evanston IL 60202
Tel: 224) 420-9309
21st June, 2013

Kasaundra Harold
Manager Behavioral Department
Lorretto Hospital
645 South Central
Chicago IL

Dear Kasaundra,

### A Letter of Request for my records

Per our conversation yesterday together with Mrs. Jessica Philps Director, you and my self, I am here by requesting for copies of my record as follows: 1) a copy of the very letter or write up which you presented to me about me being absent from work three times in the month of May 2013 .That write up, I belived was taken away by Mrs. Jessica Philps for amendment.2) Print out of my time and attendance sheet ( punching in and out for the month of May 2013) 3) The letter of complained which was given to you by Mr. Josh, registered nurse about my self and Samuel Banda .I strongly believe a copy of that letter is in my file. 4) Any other write-ups or complain letter that you may have in my file whether it is formal or informal

I need these information only for record purpose and nothing else. Please, do not have any fear or suspicion over me requesting for my record. Thus, under the State of Illinois Administrative law commonly known as rule 147, employees have the right to request for their file provided the give their Administrators advance notice in writing. I look forward to hearing from you in due course

Sincerely,

John Tucker

Mental health specialist

Subscribed and sworn to before me

this 21 day of June 20 13
at Chicago, County of Cook, State of Illinois.

Notary Public

"OFFICIAL SEAL"
ELIZABETH OGUNREMI
Notary Public, State of Illinois
My Commission Expires Jan. 25, 2015
Commission No. 744205

NorthShore University HealthSystem
Medical Group Department of Orthopaedics
1000 Central Street Suite 880
Evanston, IL 60201
847-570-2825

Merchant ID: 5423478          Term ID: 001

### Sale - Approved

Date: 01/20/15                 Time: 16:01:58
Card Type: Visa
Entry Method: Swiped
Card #: XXXXXXXXXXXX6112

Invoice #:      10
Approval Code: 080116
Customer Ref:  200437812

### Amount          **$50.00**

I agree to pay the above total amount according to the card
issuer agreement. (Merchant agreement if credit voucher)

After your visit, please ask your
provider for the
After Visit Summary (AVS)

Customer Copy

Receipt Number: 9820440
Date: 01/20/2015

COPAY RECEIPT

NORTHSHORE UNIVERSITY HEALTHSYSTEM
1000 Central St   Suite 880
EVANSTON, IL 60201
Phone   847-570-2570

Patient:
Guarantor:        TUCKER, JOHN
Pmt Source:       TUCKER, JOHN
Ref/Check         Credit Card
                  080116

Provider: HENTATI, AFIF
Acct #:   500762
Amount:   $50.00

Payment Received By: LAS

Term ID:        prd

Cashier Signature:

Tue Jan 20, 2015   3:02 PM



**Mohammed Sajjad, MD**
*Board Certified in Family Medicine*
*Mon, Tue, Thur: 9am - 6pm | Fri: 8:30am - 12:30pm*
*Sat, Sun: 9am - 3pm | Wed: Closed*

2017 S. Western Ave.
Chicago, IL 60608

Ph: (773) 847-7878
Fax: (773) 847-7879

**Walk-ins Welcome**

Name: John Tucker | DOB: 3/3/1959 | MRN: 200437812 | PCP: Ayman M Jabr, MD

## Sent Items

These are the messages that you sent to your physician office. You can view the complete text by clicking on the message.

### Messages in bold have not yet been read.

| Subject | To | Sent |
|---|---|---|
| Medication Renewal Request | AFIF HENTATI, MD | 02/18/2015 3:52 PM |

e:Vision Portal                                                                    Page 1 of 2

Student Reports and Processes page

## Programme of Study Information 2013/4

**MSc Psychiatry (eLearning):** You have completed Confirmation of Programme of Study for 2014/5.

Academic Details for Current Programme Year 2014/5

Click to view information about School Enrolment / Induction - Medicine

## Transfer Request Facility

This facility can be used to request a Programme Transfer to take effect IMMEDIATELY from MSc Psychiatry (eLearning) to a different Programme. Academic advice and support MUST be sought from the relevant School(s) prior to submitting a request for a transfer.

Request an IMMEDIATE Programme Transfer

This facility can be also be used to request a DEFERRED Programme Transfer, i.e. to WITHDRAW from your current Programme NOW and to start a new Programme later in the current academic year (2014/5), or to defer to the next academic year (2015/6). Academic advice and support MUST be sought from the relevant School(s) prior to submitting a request for a transfer.

Request an DEFERRED Programme Transfer

## Personal & Contact Details

**Permanent Home Address:**
16 Sumaila Street
Kenema
Sierra Leone
West-Africa
N/A
Tel: 011-232-77-20-9310
Mobile: 1-872--239-9031
E-mail:
SLeoneVendingCupCo@yahoo.com

**Term-Time Address:**
1325 Brummel Street
Evanston
Illinois

Apologies, but due to very high demand, applications are now closed for the Autumn Semester except for those students permitted to select a free-standing module. Application for Spring Semester will open late in November. Please see Languages for all - Independent self-study for alternative options.

## Register to vote

Before you can vote in UK elections or referendums you need to register to vote. You are eligible to register to vote if you are 16 or over and British or a national of an EU or Commonwealth country.

Students are eligible to be registered at both home and term-time addresses. You can vote once where you happen to be on voting day.

You can register to vote by following this link:
https://www.gov.uk/register-to-vote

You will need your National Insurance Number to register (if you have one). If you do not have your National Insurance Number you can register to vote on paper in the Students' Union.

Click here to remove this message

## Mobility

View Mobility Data

## University Residences

Access the University Residences booking and management system by clicking the link to the right.

University Residences

If you have accepted a room in University residences you will need to complete an online induction before your arrival in Cardiff. Click the link on the right.

University Residences Induction

Task Questions

Queries: studentrecords@cf.ac.uk, 029 2087 6211. [Ref: 1352828_86626877 AMT6 STEP0130]

EXIT

## JOHN PHILLIP TUCKER

## ACADEMIC HISTORY - MSC PSYCHIATRY (ELEARNING)

MSc Psychiatry (eLearning)  (PPMSPSIB)

| | | |
|---|---|---|
| Student Code: | 1352828 | Student Name: John Phillip Tucker |
| Start Date: | 23/Sep/2013 | End Date: |
| Status on Programme: | Current- Year: 2 | Programme Result: |

### MODULE RESULTS

| Acad Yr | Semester | Mod Code | Module Name | Credits | Agreed Mark | Agreed Grade | Result | Attempt no. | Date |
|---|---|---|---|---|---|---|---|---|---|
| 2013/4 | Autumn | MET450 | Organic Illness And Substance Misuse | 30 | 50 | PM | P | 1 | 08/Jul/2014 |
| 2013/4 | Spring | MET451 | Psychosis And Mood Disorders | 30 | 50 | PM | P | 1 | 08/Jul/2014 |

### MODULE AND ASSESSMENT RESULTS

Module results that have been confirmed by an Examining Board are shown below.

Note:
- where a module has been re-sat that has previously been failed, the overall module result will be capped at a pass mark;
- accepted Extenuating Circumstances are indicated by a letter 'A' or 'B' after the assessment mark;
- NYA = Not yet available;
- grade only assessments will show a mark of 100 for a pass or 0 for a fail.

For a list of assessment grades and module grades and their meanings, please click here

If you think the data may be incorrect then please contact your School.

| Mod Code | Module Name | Start Year | Credits | Level | Mod Mark | Mod Grade | Attempt No |
|---|---|---|---|---|---|---|---|
| MET450 | Organic Illness and Substance Misuse | 2013/4 | 30 | L7 | 50 | PM | 1 |
| Assessment Title | | | | | Weighting | Mark / Grade | Assessment Status |
| Organic - Final Exam | | | | | 70% | 42 / F | Confirmed |

----- IDMID start url261D2CF1843A...    9/24/2014

Task Questions

| | | | | | 5% | 45 / F | Confirmed |
| Organic - Virtual Patient 1 | | | | | 5% | 53 / P | Confirmed |
| Organic - Virtual Patient 2 | | | | | 5% | 65 / P | Confirmed |
| Organic - Virtual Patient 3 | | | | | 5% | 100 / P | Confirmed |
| Organic - Contribution to Discussions | | | | | 5% | 70 / P | Confirmed |
| Organic - Creation of a Vitual Patient | | | | | 10% | | |

| Mod Code | Module Name | Start Year | Credits | Level | Mod Mark | Mod Grade | Attempt No |
|---|---|---|---|---|---|---|---|
| MET451 | Psychosis and Mood Disorders | 2013/4 | 30 | L7 | 50 | PM | 1 |

| Assessment Title | Weighting | Mark / Grade | Assessment Status |
|---|---|---|---|
| PSYCHOSIS AND MOOD DISORDERS - Final Exam | 70% | 45 / F | Confirmed |
| Psychosis and Mood Disorders - Virtual Patient 1 | 5% | 43 / F | Confirmed |
| PSYCHOSIS AND MOOD DISORDERS Virtual Patient 2 | 5% | 41 / F | Confirmed |
| PSYCHOSIS AND MOOD DISORDERS - Virtual Patient 3 | 5% | 41 / F | Confirmed |
| PSYCHOSIS AND MOOD DISORDERS - Creation of a Virtual Patient | 10% | 69 / P | Confirmed |
| PSYCHOSIS AND MOOD DISORDERS - Contribution to Discussions | 5% | 100 / P | Confirmed |

View Correspondence for John Phillip Tucker
The View Correspondence link will open in a new window. Close the window to return to this page.

Please choose your next action then click on the 'Next' button.

○ **Personal and Contact Details**

○ **Current Programme Year**

○ **Exit**

Next

United States Of America
IL 60202
Tel: 1-224-420-9309
E-mail:TuckerJP@cardiff.ac.uk

Update Address, Phone Number or Home Email

Statement of Personal & Contact Details

Update Emergency Contact Details

Update Name or Title

Update Date of Birth

Submit a query regarding your Personal Details

## Language for correspondence / Iaith gohebu

Language for correspondence / Iaith gohebu

## Academic Details

Statement of Academic History (Module Results)

Apply for an Interruption of Study

Notification of Withdrawal from Programme of Study

Submit a query regarding your Academic Details

## Requests for Proof of Enrolment etc. Letters

Request a Proof of Enrolment Status Letter

Request a Bank Letter

Request a Council Tax Certificate

## Correspondence from Cardiff University (from Mar08)

View Correspondence

## Finance Information

Statement of Your Tuition Fee and Other Debts

Make a Debt Payment via Credit / Debit Card

Set up Direct Debit Mandate

Print a Receipt for a Tuition Fee Payment

Send an Email query to Finance



# UNIVERSITY OF ILLINOIS

*By authority of the Board of Trustees of the*

*and upon recommendation of the Senate*

*at Chicago*

## John Phillip Tucker

*has been admitted to the Degree of*

## Bachelor of Arts in Liberal Arts and Sciences

*and is entitled to all rights and honors thereto appertaining.*

*Witness the Seal of the University and the signatures of its Officers*

*this seventeenth day of March, nineteen hundred and ninety-one.*

President of the University

Chancellor

President of the Board of Trustees

Secretary of the Board of Trustees



UNIVERSITY OF LONDON
External System

Stewart House, 32 Russell Squa
London WC1B 5DN

# Notification of Results

Session 2009 - 2010

Mr John Philip TUCKER
1325 Brummel Street
Evanston
Illinois 60201
UNITED STATES

Candidate no. 34537          SRN: 927046912

Field of Study: **LLB Graduate Entry - Route A Level I**

Exam Centre: USA/CCTC/ILLINOIS/3441

## Course

| | | Mark | Result |
|---|---|---|---|
| 91 265 0010 | Criminal Law | 34 | Fail |
| 91 265 0020 | Public Law | 33 | Fail |
| 91 265 0031 | Common Law Reasoning and Institutions (New Syllabus) | 50 | Pass |
| 91 265 0040 | Elements of the Law of Contract | 46 | Pass |
| 91 265 99GA | **Graduate Entry Route A Level I - Overall Result (June)** | | Fail (November) |

Notes:    The grades and marks shown on this document are provided for the personal information of the candidate.

The final results for each candidate are determined not only on the basis of the grades or marks awarded to the candidate in the individual elements of the examination, but also on the assessment by the examiners of the overall performance of the candidate.

Various factors may be taken into account in arriving at the final result, such as the distribution of the marks awarded to the candidate over the various elements, the strength or weakness shown in certain elements in relation to that in other elements, and any special difficulties known to have been experienced by the candidate at the time of the examination (e.g. illness).

- email or phone

**contact name:**
- Mr. Parker

**contact by phone:**
- 312-214-4993

**reply by email:**
- 6cshc-4849357890@job.craigslist.org

# MENTAL HEALTH TECHNICIANS WANTED $20.00 per hr

compensation: **$20.00 per hr**

part-time

Mental Health Technician / Psych Tech

**POSITION SUMMARY:**
The Psych Tech will collaborate and assist in patient care with all members of the health care team with the coordination of the Registered Nurse (RN).
Provides direct patient care in the acute care inpatient behavioral hospital setting.
Gives a basic level of general behavioral and psychiatric care to mentally or developmentally disabled patients/youths.
Conduct daily clinical rounds and monitoring of patients/youths with signs and symptoms of mental illness.
Communicates with Charge RN and co-workers as appropriate about changes in patient's clinical condition including vital signs, behavioral and physical symptomatology. Is able to respond quickly to changes in patient's status. Is able to perform basic nursing functions under direction of Charge nurse.
1st 2nd & 3rd Shifts Available

**FUNCTIONAL RESPONSIBILITIES:**
Performs basic patient care activities for adolescent, adult, and geriatric patients as delegated by the RN.

**QUALIFICATIONS:**
1. Bachelor's Degree in a Social Science or health related field required.
2. Previous experience working with mental health population required.
3. Effective verbal and written communication skills.
4. Current CPR card, & Current CPI card, REQUIRED!!!

**WORKING CONDITIONS:**
Unpredictable environment with wide variations in the types of patients, acuity levels, times of admissions/discharges and the number of patients/health care team members.
Works in a standard patient care area with varying conditions.

**Form W-2 Wage and Tax Statement 2014**

c Employer's name, address, and ZIP code
LORETTO HOSPITAL
645 S. CENTRAL AVE
CHICAGO, IL 60644

b Employer identification number (EIN) 36-2200248

a Employee's social security number 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

7 Social security tips

8 Allocated tips

9

10 Dependent care benefits

11 Nonqualified plans

12a E 1528.73

12b

12c

12d

13 Statutory employee / Retirement plan / Third-party sick pay

14 Other

Employee's name, address, and ZIP code
JOHN
1325 BRUMMEL
EVANSTON IL 60201
TUCKER

15 State IL  Employer's state ID number 36-2200248

16 State wages, tips, etc. 52383.16

17 State income tax 2466.34

18 Local wages, tips, etc.

19 Local income tax

20 Locality name

1 Wages, tips, other compensation 52383.16

2 Federal income tax withheld 5387.45

3 Social security wages

4 Social security tax withheld 3252.77

5 Medicare wages and tips

6 Medicare tax withheld 780.37

---

**Form W-2 Wage and Tax Statement 2014**

c Employer's name, address, and ZIP code
LORETTO HOSPITAL
645 S. CENTRAL AVE
CHICAGO, IL 60644

b Employer identification number (EIN) 36-2200248

a Employee's social security number 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

7 Social security tips

8 Allocated tips

9

10 Dependent care benefits

11 Nonqualified plans

12a E 1528.73

12b

12c

12d

13 Statutory employee / Retirement plan / Third-party sick pay

14 Other

Employee's name, address, and ZIP code
JOHN P.
1325 BRUMMEL
EVANSTON IL 60201
TUCKER

15 State IL  Employer's state ID number 36-2200248

16 State wages, tips, etc. 52383.16

17 State income tax 2466.34

18 Local wages, tips, etc.

19 Local income tax

20 Locality name

1 Wages, tips, other compensation 52383.16

2 Federal income tax withheld 5387.45

4 Social security tax withheld 3252.77

6 Medicare tax withheld 780.37

# ILLINOIS DEPARTMENT OF
# ◀Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

October 27, 2014

**Mr. John P. Tucker**
**1325 Brummel Street, 1ˢᵗ Floor**
**Evanston, IL 60202**

### John P. Tucker vs. Loretto Hospital, <u>Control No. 151023-012</u>

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. **After the EEOC issues its findings**, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC's findings by either of the following methods:

| | |
|---|---|
| **By Mail:** | Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601. |
| **In Person:** | Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records. |

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings. Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings. Your failure to timely *provide the EEOC's findings to the Department will result only in the Department closing your file. **This process does not affect the investigation of your charge at EEOC.** If you do not wish to proceed with the Department, you do not need to take any further action.*

*This letter **does not apply** to any settlement of this charge the parties have made with the EEOC.*

#### *If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.*

ILLINOIS DEPARTMENT OF HUMAN RIGHTS

**CC Loretto Hospital**
**645 South Central Ave.**
**Chicago, IL 60644**

_EEOC 30 Rev: 12/11_

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:    John Tucker
       c/o Jonathan Ksiazek
       Ed Fox and Associates
       300 W. Adams
       Suite 330
       Chicago, Illinois 60604-2505

From:  Chicago District Office
       500 West Madison St
       Suite 2000
       Chicago, IL 60661

RECEIVED

BY: ........................

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2014-06531 | Victoria H. Shealey, Investigator | (312) 869-8079 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| | More than 180 days have passed since the filing of this charge. |
| X | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| X | The EEOC is terminating its processing of this charge. |
| | The EEOC will continue to process this charge. |

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

| | The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |

| | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman*        3/20/15
_____    _____
Julianne Bowman,              (Date Mailed)
Acting District Director

Enclosures(s)

cc:    c/o Michael G. Cleveland
       Vedder Price
       222 N. LaSalle
       Chicago, IL 60601

ILLINOIS DEPARTMENT OF
# Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

October 27, 2014

Mr. John P. Tucker
1325 Brummel Street, 1st Floor
Evanston, IL 60202

John P. Tucker vs. Loretto Hospital, <u>Control No. 151023-012</u>

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. **After the EEOC issues its findings**, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC's findings by either of the following methods:

**By Mail:** Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

**In Person:** Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records.

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings. Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings. Your failure to timely provide the EEOC's findings to the Department will result only in the Department closing your file. **This process does not affect the investigation of your charge at EEOC.** If you do not wish to proceed with the Department, you do not need to take any further action.

This letter **does not apply** to any settlement of this charge the parties have made with the EEOC.

**If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.**

ILLINOIS DEPARTMENT OF HUMAN RIGHTS

**CC** Loretto Hospital
645 South Central Ave.
Chicago, IL 60644

_EEOC 30 Rev: 12/11

Dept. of Human Rights
INTAKE UNIT

APR 20 2015

RECEIVED

By:

,one Tel 224)420-9309
el Tel 872)239-9031

1325 Brummel Stree
Evanston IL 6020:
20th April 2015

The Human Right
Department
100 W. Randolph Street,
Chicago IL

Dear Sir/Madam
John Tucky v Loretto
Hospital.
Case No 440-2014-0653

I will like you
to investigate this matter.

Thanks

John p Tucky

Dept. of Human Rights
INTAKE UNIT

APR 20 2015

RECEIVED

By:

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
EEOC National Toll Free: (800) 669-4000
EEOC National TTY: (800) 669-6820
Chicago Direct Dial: (312) 869-8000
Chicago TTY: (312) 869-8001
Mediation Fax: (312) 869-8060
Mediation Unit: (312) 869-8052

December 5, 2014

Ms. Amy Coleman
Human Resources Generalist
Loretto Hospital
645 South Central Ave.
Chicago, IL 60644

**Re:** **Tucker v. Loretto Hospital**
EEOC #: 440-2014-06531

Dear Ms. Coleman:

Please be advised that because Respondent objected to mediation or failed to respond to EEOC's inquiry concerning mediation in the above-referenced Charge of Discrimination, the charge will now be forwarded to an enforcement unit for investigation. If Respondent has already submitted its response to the Charge and its evidentiary support, Respondent need not take any further action until after it is contacted by the EEOC investigator.

If Respondent has not submitted a position statement, then Respondent is required to submit its response to the Charge and its evidentiary support within forty (40) days of the date the Charge was received by the EEOC. The deadline for Respondent to reply to the Charge is stated in the "Notice of Charge of Discrimination" (Form 131) which accompanied the Charge of Discrimination. If the due date in the "Notice of Charge of Discrimination" has passed, Respondent's response to the Charge and evidentiary support are past due. In that case, Respondent must submit its response to the EEOC representative identified at the bottom of the "Notice of Charge of Discrimination" immediately.

If you have any questions, please contact the Commission representative named on the "Notice of Charge of Discrimination."

Sincerely,

*Julianne Bowman*

Julianne Bowman
District Director (Acting)

cc     Mr. John Tucker
       1325 Brummel Street, 1st Floor
       Evanston, IL 60202

03-30- 15 15:49 FROM-

T-184  P0001/0001 F-898



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Chicago District Office

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220

FILE REVIEWS FAX: (312) 869-8220

Mr. Jonathan R. Ksiazek, Esq.
Ed Fox & Associates
300 W. Adams Street, Suite 330
Chicago, Illinois 60606

**RECEIVED MAR 3 0 2015**

Re: John Tucker v. Loretto Hospital
EEOC Charge Number: 440-2014-06531

Dear Mr. Ksiazek:

I am in receipt of your written request for a copy of the file referenced above. **IF YOU ARE THE CHARGING PARTY AND HAVE ASKED FOR DOCUMENTS FROM YOUR CHARGE FILE BEFORE YOU HAVE FILED A LAWSUIT BASED ON YOUR CHARGE, BY ACCEPTING THESE DOCUMENTS YOU AGREE THAT YOU WILL USE THEM ONLY IN CONNECTION WITH CONTEMPLATED LITIGATION AND WILL ONLY SHOW THEM TO PERSONS IN A PRIVILEGED RELATIONSHIP, SUCH AS A SPOUSE, CLERGY, OR MEDICAL, FINANCIAL OR LEGAL ADVISOR.**

Also, please sign this letter at the bottom indicating that you agree to pay ALOHA DOCUMENT SERVICES for copying costs. After we have received this signed and dated form from you and had an opportunity to review the file, we will send the file to the copy service. **IF A COMPLAINT HAS BEEN FILED IN FEDERAL DISTRICT COURT, PLEASE PROVIDE A COPY OF THE FIRST FEW PAGES OF THE COMPLAINT, SO THAT EEOC CAN DETERMINE IF THE COMPLAINT WAS FILED BASED ON THE CHARGE,** if you have not already done so.

If we do not receive this signed form letter within 30 days of the date of this letter, the Commission will assume that you no longer wish a copy of the file.

Date: <u>March 26, 2015</u>

*Sylvia Bustos*

Sylvia Bustos
Records Disclosure Coordinator
sylvia.bustos@eeoc.gov
Phone: 312-869-8084          Fax: 312-869-8220

(PLEASE CHECK ONE)

___ I do not choose to review the file before it is copied.
-or-
___ I want to review the file before it is copied.

If you wish to review the file, review is *by appointment only*. You will be contacted to schedule an appointment; please be advised that you must bring picture identification with you for access to the office.

I agree to pay Aloha Document Services for copying the documents requested in the file and I understand that I will not be charged more than fifteen (.15) cents per page.

Date: <u>3/30/15</u>    <u>Signature</u>    <u>312-345-8877</u>
Phone number (with area code)

This information is being given to you to help you decide whether your employment problem can be handled by the United States Equal Employment Opportunity Commission (EEOC). The EEOC was created by Congress to investigate allegations of employment discrimination engaged in by private employers, public state and local governments, labor unions and employment agencies. The EEOC <u>can only investigate allegations</u> of employment discrimination because of one or more of the reasons listed below:

> Your race,
> Your color (darkness or lightness of skin),
> Your sex,
> Your religion,
> Your national origin,
> Your age (if you are 40 or older), or
> Your disability (includes employer's belief that you are disabled),
> Your genetic information (acquiring or use of)
> Opposing or protesting an act violating one of the laws enforced by EEOC,
> Participating in an investigation or proceeding relating to one of the laws enforced by EEOC,
> Associating with someone protected by one of the laws enforced by EEOC.

Some of these terms may have different meanings under the laws we enforce than elsewhere. EEOC can provide you with information regarding the meaning of the terms concerning your situation.

The EEOC **does not** accept complaints of discrimination against the <u>Federal Government</u>. Such complaints must be filed with the EEO office of the agency alleged to have engaged in discrimination.

The EEOC **does not** investigate charges alleging unfairness unrelated to race, color, sex, religion, national origin, age or disability.

The laws EEOC enforces against employment discrimination based on race, color, religion, sex, national origin, and disability require that an employer must employ 15 or more employees, and a charge must be filed within 300 days of the alleged discriminatory act.

The law that prohibits employment discrimination against persons 40 years of age or older requires that the employer must employ 20 or more employees, and a charge must be filed within 300 days of the alleged discriminatory act.

A law that prohibits discrimination based on sex in the payment of wages for substantially equal work, requires that a lawsuit must be filed within two years of the alleged discriminatory act. The employer must employ at least one employee other than the employee complaining of discrimination. A charge may be filed within the same two year period but is not required.

EEOC accepts charges of discrimination from the public and depending on the circumstances, may take one or more of the following actions regarding a charge:

1. Investigate to the extent EEOC deems necessary to determine whether illegal employment discrimination probably has occurred;

2. Attempt to work out a settlement of the dispute between the individual who filed the charge (Charging Party) and the organization accused of employment discrimination (Respondent); or;

3. Provide the Charging Party with a notice which permits him/her to sue the Respondent.



| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form | ☐ FEPA | |
| | ☒ EEOC | 440-2014-06531 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. John P. Tucker | (224) 420-9309 | 03-03-1959 |

Street Address      City, State and ZIP Code

1325 Brummel Street, 1st Floor, Evanston, IL 60202

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| LORETTO HOSPITAL | 500 or More | (773) 854-5320 |

Street Address      City, State and ZIP Code

645 South Central Ave, Chicago, IL 60644

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address      City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest      Latest |
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☒ NATIONAL ORIGIN | 09-09-2014 |
| ☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about November 7, 2004. My most recent position was Mental Health Specialist. On or about September 9, 2014, I was discharged.

I believe I was discriminated against because of my national origin, Sierra Leonean, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

OCT 0 2 2014

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | |
| Oct 02, 2014 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date      Charging Party Signature | |

Tel 3)2) 869 - 8010

# LORETTO HOSPITAL
## DISCIPLINARY ACTION FORM – SEIU HCII

Employee Name __John Tucker__          Position/Title __MHS__

Department __Behavioral Health__          Date __September 9, 2014__

**Disciplinary Action:**

☐   Oral Reprimand            ☐   Suspension

☐   Second Written Reprimand     ☒   Discharge

I.    Description of Incident: (describe the problem with relevant dates & details; identify the policy, rule or standard violated.)

On Tuesday, September 9, 2014, at approximately 0400, you were observed sleeping by the Administrative Supervisor on the 8th floor Addictions Unit while on duty. This behavior is considered a negligent and willful act that is detrimental to patient care, customer service and hospital operations per HR Policy 2412 – Employee Discipline and Conduct.

II.    Identify consequences of repeat violations or continued poor performance:
Sleeping on duty constitutes job abandonment and warrants immediate termination.

List previous disciplinary actions and dates:

III.    Employee Comments: Employee indicates he was meditating, listening to PRAISE SONG. States he had blanket on because he was extremely cold. No one Relieved FOR BREAK.

IV.    Union Steward Requested: ✓ Yes      ___ No

Employee's signature below indicates the above disciplinary action was discussed with the employee and a copy of same was given to the employee.

_Jerome Phillips_   9/9/14
Department Manager      Date

Employee Signature      Date

X _____ 09/09/2014
Supervisor's Signature    Date

_Jerome Cohn_   9/9/14
Witness (Required in the event employee refuses to sign) Date

Administration      Date

Human Resources      Date

# LORETTO HOSPITAL

## POLICY

| EFFECTIVE DATE: 1/96 | SECTION: Management of Human Resources | POLICY NUMBER 2412 |
|---|---|---|
| | TITLE: Employee Discipline and Conduct | |
| REVISIONS: 3/99 1/01 3/05 | AUTHORIZED BY: Steve Drucker President        Date 3/01 | PAGE 1 of 7 |

## PURPOSE

To ensure that all employees are fully aware of the standards of conduct expected of them and are treated fairly and uniformly if they violate these standards of conduct. Loretto Hospital has established a system of progressive discipline.

## POLICY STATEMENT

Employees who participate in a collective bargaining agreement recognized by the Hospital are also subject to the terms of this policy. Where there are differences between this policy and the terms of the collective bargaining agreement, the agreement will govern.

Progressive discipline refers to the concept of increased severity in disciplining employees who repeatedly violate Hospital rules while performing work for the Hospital or while on Hospital premises. Written reprimands are given for initial, minor infractions of the Hospital rules; if violations are repeated or different more serious violations occur, progressively harsher discipline is imposed.

Loretto Hospital shall utilize a progressive disciplinary action which shall include the following levels of formal disciplinary action:

**First written reprimand** (verbal reprimand for bargaining unit employees) is the first level of formal discipline. The manager should point out the infraction and make sure the employee understands the rules, policies, and expectations. It should include recommendations on how the employee is expected to meet expectations in the future.

## LORETTO HOSPITAL
## POLICY

| EFFECTIVE DATE: 12/03 | SECTION: Hospital Wide | POLICY NUMBER: 2319 |
|---|---|---|
| REVISION 2/05, 1/08 | TITLE: Use of Cellular Telephones in the Facility | |
| | =================================== AUTHORIZED BY: | ============= PAGE 1 of 2 |
| REVIEWED 3/06, 1/08 | *w. lnmg*    *1/08* Date  W. Suszek Safety Committee Chairperson | |

### PURPOSE:

To provide for a safe environment in patient care areas by avoiding potential electromagnetic interference risk to sensitive medical equipment. This policy shall define restricted areas of the hospital for the use of cellular telephones.

### POLICY STATEMENT

Employees who participate in a collective bargaining agreement recognized by the Hospital are also subject to the terms of this policy. Where there are differences between this policy and the terms of the collective bargaining agreement, the agreement will govern.

Loretto Hospital will minimize the risk associated with this phenomenon by limiting the use of cellular telephones in Patient Dependent on Equipment locations [PDE]. A PDE location is defined as an area, which has equipment attached to patients where, if the equipment malfunctions, could cause or contribute to injury of the patient. The use of cellular telephones is prohibited in the following designated Patient Dependent on Equipment locations. Exceptions to this are hospital issued cell phones used by Nursing.

- Patient Rooms
- Surgery / Recovery Units
- Intensive Care Units
- Emergency Department
- Elevators

Due to the potential violation of patients' rights from a medical and health information standpoint, taking pictures with cell phones is strictly prohibited.

**Second written reprimand** is used after a first written reprimand (verbal reprimand for bargaining unit employees) fails to change conduct or performance. A second written reprimand may lead to a more serious discipline, up to and including discharge if the problem is not corrected.

**Suspension without pay** for a given period of time can be given:

- As a disciplinary measure either for a serious first-time offense or as part of progressive discipline either after or in lieu of discharge.

- During an investigative period when discharge or disciplinary suspension may result. Suspension under these circumstances shall be viewed as "suspension pending investigation." A suspension pending investigation is not disciplinary in nature. Whether or not an employee will be paid for time off during a suspension pending investigation depends on the outcome of the investigation. If the investigation reveals that discipline or termination is not justified, the suspended employee shall be returned to duty immediately and paid any wages lost during the suspension. Further, all documentation relating to the suspension shall be removed from the employee's personnel file.

Disciplinary and investigative suspensions are usually limited to three consecutive work days; investigative suspensions may require additional time to complete an investigation and obtain approvals. All employee benefits remain in effect.

**Discharge** is appropriate for certain first-time offenses or after previous efforts at progressive discipline have failed. The manager must consult with the Associate Vice President of Human Resources before discharging an employee.

The above steps may be entered into at any stage, up to and including suspension and discharge, depending on the severity of the infraction and/or Hospital policy violated.

Disciplinary actions that will directly result in suspension or discharge must be reviewed by the Associate Vice President of Human Resources and the appropriate Vice President.

The discipline policy applies to all employees. New employees in the probationary period are subject to this policy. However, management need not take these employees through the entire course of progressive discipline prior to termination.

Violation of Hospital rules and regulations are classified as:

- Critical offenses
- Major offenses
- Serious offenses

- Minor offenses

Normally, discipline should be administered by the employee's immediate supervisor or a higher level supervisor in the same management chain.

Violations of different rules are cumulative.

All disciplinary actions, up to including termination, shall be recorded on the Disciplinary Action Form. Documentation shall include:

a. A description of the problem and relevant dates and details
b. Identification of the policy, rule or standard violated.
c. Consequences of repeat violations or continued poor performance.

Employees shall receive disciplinary actions within a reasonable period from the time of the infraction (within 30 days). However, circumstances preventing a timely issuance of a disciplinary action shall not be cause for not taking action.

Employees' refusal to sign a Disciplinary Action Form shall be witnessed by both the Manager and a witness and so noted on the form.

Hospital recognized bargaining unit employees shall be offered union steward representation.

An employee shall receive a copy of all official disciplinary actions issued to him/her.

An employee may appeal any disciplinary action by filing a grievance -- see Grievance Policy/Procedure.

Disciplinary actions issued within a twelve month period from the time of the first infraction shall be considered for purposes of further disciplinary action. Exceptions to the twelve month time period shall include disciplinary actions issued which have resulted in lost time (i.e., suspensions). These disciplinary actions may be considered when serious infractions beyond the twelve month period occur.

For the purposes of this policy, a year is defined as a consecutive, rolling, 12-month period.

**Special Resignation Situations:**

The following circumstances constitute a voluntary resignation by an employee; however, the Hospital reserves the right to declare infractions as such as grounds for discharge. While the supervisor must initiate the termination paperwork, they are not a cause for progressive discipline:

- An unreported absence for three consecutively scheduled work days.
- Failure to return after a leave of absence.
- Job abandonment by leaving Hospital premises without written permission of their supervisor/manager.
- Refusal to accept an offer of same or comparable position (which makes reasonable accommodation as may be required by law) when released to return to work after illness, injury or family/medical leave.

## Employee Conduct

### Critical Offenses

*Critical offenses* are misconduct or violations of Hospital rules which may justify immediate termination. The employee shall be suspended immediately (usually no more than three work days) while the incident is being investigated by Hospital management. Examples of critical offenses are:

1. Dishonesty, theft, cheating or fraud.
2. Using another employee's I.D. card to swipe that person "in" or "out" for payroll purposes or giving your I.D. card to another person for the purpose of swiping you "in" or "out" for payroll purposes.
3. Employees photocopying their I.D. badges and/or making a computer copy of the I.D. badge bar code.
4. Threatening, intimidating or coercing patients, customers, employees or others.
5. Unauthorized possession of weapons, firearms or explosives on premises.
6. Conviction of a felony while employed.
7. Negligent or willful damage of Hospital equipment or property.
8. Physical or sexual assault, which may include offensive touching of any person during working hours or on Hospital premises.
9. Deliberate or negligent omission, or falsification, of significant information on the employee application, time records/reports, Hospital records, benefit forms, or other Hospital related documents or reports.
10. Use, possession, sale or impaired performance due to the use of intoxicating, illegal or controlled substances of any kind on Hospital property while on work time.
11. Refusing to submit to drug testing when reasonable cause exists regarding the use of a controlled substance.
12. Negligent or willful acts or conduct detrimental to patient care, customer service or hospital operations or which result in neglect or abuse of any patient or others.
13. Refusal to perform assigned duties.
14. Misuse or unauthorized disclosure of confidential information, including unauthorized access or copying Hospital records (including patient medical charts or personnel files),

unauthorized release of customer information or other Hospital data.

15. Sleeping on the job constituting abandonment of duty.

16. Willful violation of safety standards or other standards, which compromises the physical well being of patients and employees or which could result in major damage to equipment. Includes smoking in all buildings and/or areas where combustible/flammable materials are stored, failure to wear seatbelt while driving Hospital vehicles and failure by driver to ensure that others in Hospital-owned vehicle are wearing seatbelts.

17. Absence without notice for three consecutive scheduled work days.

18. Unauthorized recording (audio and/or video) of Hospital business.

19. Other extreme instances of improper conduct not specifically listed.

## Major Offenses

*Major offenses* are lesser violations than critical offenses, but may require disciplinary suspension from work for a first offense (no more than three work days). Examples of major offenses are:

1. Gambling on Hospital premises.

2. Refusal to work, without a good reason, when needed in times of emergency call-ins, disaster, etc.

3. Willful misconduct.

4. Willful misuse of computerized applications controlled by the Director, Information Systems.

5. Verbal abuse.

6. An act of harassment.

7. Absent without notice one day.

8. Soliciting and/or accepting money, loans, tips or financial remuneration of any kind from patients, family members, vendors or customers.

9. Other major instances of improper conduct not specifically listed.

## Serious Offenses

*Serious offenses* do not justify immediate discharge or suspension, but require disciplinary action. Examples of serious offenses are:

1. Performing work other than Hospital assignments during working hours.

2. Failure to use safety devices; failure to comply with safety precautions.

3. Failure to report an on-the-job accident.

4. Interfering with, or distracting, an employee at work which does not constitute harassment.

5. Eating food prepared and intended for patients or for cafeteria sale.

6. Use of vile, intemperate language.

Employee Discipline and Conduct

5

7. Possession of another employee's ID card and/or misuse of own ID card.
8. Posting, altering or removing any matter on bulletin boards on Hospital premises unless specifically authorized to do so.
9. Failure to follow Hospital smoke-free policy.
10. Removal of Hospital property from premises without written authorization.
11. Other serious instances of improper conduct not specifically listed.
12. Fails to swipe in and/or out when leaving building for lunch.

**Minor Offenses**

*Minor offenses* are violations of Hospital rules which require disciplinary action in the form of written counseling. Examples of minor infractions are:

1. Loitering.
2. Failure to report to work or return from breaks on time, which does not constitute tardiness.
3. Occasional carelessness.
4. Failure to perform assigned duties in appropriate manner or at assigned times.
5. Failure to wear prescribed uniform or apparel or adhere to the standards of dress, hygiene or grooming.
6. Attending to personal affairs on Hospital time, including personal phone calls or visitors, without permission.
7. Creating or contributing to disorderly or unsanitary conditions.
8. Horseplay, running, scuffling or throwing objects of any kind on Hospital property.
9. Taking breaks or eating in patient rooms or unauthorized areas.
10. Failure to observe parking and traffic regulations on Hospital premises.
11. Actions or attitudes which adversely affect Hospital operations, patients or others.
12. Other minor instances of improper conduct not specifically listed.

## RESPONSIBILITY/AUTHORITY

| | |
|---|---|
| Employee | Responsible to adhere to the policy |
| Department Director/ Manager/Supervisor | Responsible for ensuring that employees follow the policy. |
| AVP of Human Resources | Responsible for enforcement of the policy. |
| Vice President | Responsible for monitoring supervisory procedures to ensure that progressive discipline is communicated and applied equally to all employees. |

Responsible for overall compliance with Policy Guidelines and recommending any Policy exception to the President/CEO.

President/CEO                    Authority to make exceptions to Policy.

# LORETTO HOSPITAL

## STATEMENT OF JOHN TUCKER

I was asked by charge nurse Jessica to work on the 8th floor last night per supervisor's Julianna request. I worked on the 8th floor by myself with thirteen patients and I was not given any break since that is the usual practice. And at 03:45 Am I decided to pray to my Lord, I turned on the computer to a prayer line and I was listening to the prayer called praise my Lord, double double while doing this, I decided to mediate and it was during this time the nursing supervisor Juliana and a orientee come in and took my picture without my consent and thereby invading my privacy, my amendment rights. Now, administration is using this picture to terminate my employment without any prior warning that I.

TSP

*NEWER POLICY*

## LORETTO HOSPITAL
### POLICY

| | | |
|---|---|---|
| **EFFECTIVE DATE:** 12/03 | **SECTION: Hospital Wide** | **POLICY NUMBER:** 2319 |
| | **TITLE: Use of Electronic devices in the Facility** | |
| **REVISION** 2/05, 1/08, 12/14 | **AUTHORIZED BY:** | --------------- |
| Reviewed 3/06, 1/08 | **Sonia Mehta, MD** **President/CMO**          **Date:** | |

**PURPOSE:**

To provide for a safe environment in patient care areas by avoiding potential electromagnetic interference risk to sensitive medical equipment. Non-work related electronic devices are a distraction for safe care of our patients. In order to provide vigilance necessary to provide safe care and high quality care to the patients at Loretto Hospital, personal electronic devices are prohibited in patient care areas. This policy shall define restricted areas of the hospital for the use of cellular telephones.

**POLICY STATEMENT**

Employees who participate in a collective bargaining agreement recognized by the Hospital are also subject to the terms of this policy. Where there are differences between this policy and the terms of the collective bargaining agreement, the agreement will govern.

1. Devices that are prohibited from use in patient care areas of units/departments
   - Cellular phones or messaging devices
   - Portable electronic games
   - Personal Laptop computers/ tablets or E Readers
   - Music, MP3 or video players
   - Head phones, headsets or Bluetooth devices
   - Video Cameras
   - Any other non-work related electronic device

2. Due to potential violation of patient's rights from a medical or health information standpoint, taking pictures with cell phones is strictly prohibited

3. All above mentioned devices will be secured in caregiver's lockers during assigned work

# Loretto Hospital is Cellular Friendly

"Please use cellular telephones with concern and privacy of others"

February 17, 2005

To:     Physicians
        Department Heads

From:   Willie Suszek
        Chairman, Safety Committee

Subject: Cellular Telephones

With cellular telephones becoming more pervasive in daily life, Loretto Hospital recognizes this and will give doctors, patients and visitors more freedom to use this wireless instrument. However, photographs may not be taken with cellular telephones equipped with camera features, without prior Administrative approval.

Effective with the memorandum, cellular telephones may be used in non-clinical areas of the hospital such as corridors, entrance lobbies, cafeteria, waiting rooms and outpatient areas by doctors, patients and visitors.

However, the ban on use of cellular telephone in patient care areas will remain in effect because they can produce electromagnetic radiation. Cellular telephones cannot be used when in close proximity [five feet or less] to patient monitors and other sensitive medical equipment.

Hospital policy defines patient-care areas as patient rooms, surgery/recovery units, intensive care units and emergency department.

When using cellular telephones in the hospital, please make sure that you will not disturb others, especially our patients. The mobility of cellular telephones makes is possible to move to a private place, if your conversation may offend/disturb others or does not concern them. It is also suggested, that anyone using a cellular telephone employ discretion when placing/receiving calls and making certain that patient confidentiality is preserved.

Employees shall keep cellular telephones in the off position while on duty and inpatient care areas. Hospital policy number 2432/HR-8572[Personal Telephone Calls To/From Employees] shall remain in place outlining additional guidelines for personal telephone use by employees. Employees may only use cellular telephones while on break/lunch periods.

You may contact me at extension 5358 with any questions/comments.



U.S

EVANSTON MPO
EVAN....
60201-9...
1615400204 ....
09/29/2014 (800)275-8777 08:59:56 A

======= Sales Receipt =======

| Product Description | Sale Qty | Unit Price | Final Price |
|---|---|---|---|

Vacation/Hold Mail Pickup                          $0.00
CHICAGO IL 60644-5059 Zone-1                       $0.49
First-Class Mail Letter
0.80 oz.
Expected Delivery: Wed 10/01/14
Return Rcpt (Green                                 $2.70
Card)
@@ Certified                                       $3.30
USPS Certified Mail #:
70142120000313843904
                                              ========
                                                   $6.49
Issue P...
                                              =========
                                                   $6.49

Total:

Paid by:                                           $6.49
Cash

@@ For tracking or inquiries go to
USPS.com or call 1-800-222-1811.
**********, ,********** **************, ,**
*****************, ,***************, ,,**
BRIGHTEN SOMEONE'S MAILBOX. Greeting
cards a... ...ble for purchase at
select Post Offices.
**********, ,*********** ,, ***********
,,**,,**,,,,,, ,,**************************

In a hurry? Self-service kiosks
offer quick and easy check-out. Any
Retail Associate can show you how.

S SECTION ON DELIVERY

com?.
E                          ☐ Agent
                           ☐ Addressee
Printed Name)   C. Date of Delivery
                              IO-1-14
ress different from item 1?  ☐ Yes
delivery address below:      ☐ No

fastpite
ail  ☐ Express Mail
     ☐ Return Receipt for Merchandise
ail  ☐ C.O.D.
ivery? (Extra Fee)          ☐ Yes

lions
7U3 1384 3904          ℓ

102595-02-M-1540

SLeone Vending Cup 26th September, 2014

@ yahoo . com .

The Chief Executive
        Officer

Loretto Hospital
Chicago IL 60202

Dear Sir / Madam

A Letter of Complain

I write to inform you
that within 10 - 15 business days, I will be
instituting a Case in the United States
District Court against your hospital and its
supervisors — Jullianne Nwauwa and mr
Thie, nurse manager, 3.West Behaviour of Unit.
The reason being that on 9/8/2014 at
03:45 Am, your supervisor Juliane came
a the eight flow where I was working and
took my picture with her cellphone

...and Nurse Manager of 3 West Poorshay. Mr. Allie then Processed picture or photograph on the internet with a copy which he gave to one Jerome Phillips Director Behaviorel health. Mr. Jerome used the Picture as evidence to terminate my Service eventhough I told him that it was saying I meditating to my God. The picture which they used in evidence was wrongfully obtained and Processed on the internet Without my consent evenly leading to a breach of my right to Privacy while also interfered with my fourth, fifth and nineth Amendment rights of the United States Constitution. The Union Stewart Jennie did file a grievance with your Administration and I called your Telephone Several times( I even Spoke to your Secretary at one ime ) but it seems you ignored all of us. So, you now have only few days to address this Matter as a family otherwise the Matter will proceed to

I look forward to hearing from you.

Thanks

John P Tuck
Formerly Mental Health specialist
(the vest guy who spoke to you
last about his missing wedding
right while doing (pt)

CR Notes

John Tucker v. Loretto Hospital  440-214-06531

Susan Smith, Investigator

Oct 2, 2014

PCP hired Nov 7, 2014 – in 2008 – took 6-7 months off for heart problems – and then returned to work. Other than that – no breaks.

PCP said no disciplinary actions during his whole employment. He always received good evaluations. PCP said Director, Jerome Phillips, PCP direct supervisor – been there a year now.

PCP said he is Sierra-Leone, West African.

Juliana Ndauwa (Nigerian – she was nationalized)

PCP said that he was terminated Sept 9, 2014 – for sleeping on the job – PCP said he was working on 8th floor by himself and no one else on floor to work with him – he said he was very cold. PCP said he was praying and put head back to remove evil around him – he had blanket on him because of cold. PCP said he put computer on with prayers. PCP said Julianne came in and took his picture on her phone and told him to go home b/c very tired. He was on overtime – they had no one – someone went home at 9pm b/c he had headache. PCP said he did not want to stay told them very tired – said to go up there.

PCP said he was not given a break – Julianna was suppose to schedule someone for break but did not. He was left up there all by himself.

PCP said this was the first time – said sleeping on the job. He said he was not but even if had been....

PCP said other Americans caught sleeping and they were only given verbal warning – not terminated. John Kelly (African American), Tammy Norwood (African American), Kena Olu (African American), and Sonia Morton (African American) – they were all caught sleeping on job. John was sleeping right under camera and Julianna caught him and only verbal warning.

Olaniyi Alli Belogun (from Nigeria but born in US) - male Nurse Manager – Assistant to Jerome Phillps, Director.

Belogun has gotten rid of 4 Africans – Timmy, Anduka, Margaret, Ruth – all Nigerians – and left African American

PCP said Sierra-Leone and Nigeria at war – regarding diamonds – some animosity between two areas.

PCP feels Juliana – did this to him b/c from Sierra Leone and b/c he got a lot of overtime – and she was jealous.

PCP said after took picture Alli-Belogun showed pictures to counselors and one Timmy Jones stood up for PCP.

PCP said he filed with union Jennie LNU – union steward – she is very angry for PCP and is trying to help him – grievance is still pending. Company does not want to pay attention to union. Jennie has additional information and would assist in any EEOC investigation.

PCP was advised of his right to file and the 300 day filing limit. PCP decided to file at this time. PCP checked race and national origin – he decided not to file on race – only national origin.

PRE-DETERMINATION INTERVIEW

From:VS
To; File
Jan. 15, 2015

**Charging Party:**John Tucker
**Respondent:** Loretto Hospital
 **EEOC Charge:**   440-2014-06531

Informed CP he is contacted for a PRE-DETERMINATION INTERVIEW  to inform him that the evidence obtained during the investigation is  that he admits the infraction resulting in his discharge and a non-Sierra Leone staff was treated the same. Informed CP based on EEOC's limited resources and the evidence obtained during the investigation a finding of no violation will be recommended.  CP was advised he has five (5) days to submit additional information.

CP was advised that EEOC procedure is that EEOC management makes the final decision on additional information and whether evidence obtained supports a violation of law. CP was advised that if EEOC management determines there is no violation of law, CP will be issued a no violation letter of determination which document will also serve as his NRTS. CP was advised he will have 90 days from receipt of NRTS to file suit against the employer in Federal District Court, and if he does not file suit within this 90 days time  his right to sue  will be lost.

Position Statement Reviewed With Charging Party and Charging Party Rebuttal

From VS
To: file
Jan. 15, 2015

**Charging Party:** John Tucker
**Respondent:** Loretto Hospital
**EEOC Charge:** 440-2014-06531

## Position Statement

Discussed R's position with CP that wwas not discriminated against due to  his national origin.
CP was photographed sleeping on the job and discharged for sleeping on the job.

## Rebuttal

CP admitted the photograph in file of a man sleeping is CP.  CP stated that he was not asleep but
is instead meditating.  CP admitted that meditating  on duty is against policy.  CP identified an
American black, national origin, non-Sierra Leone , who was discharged for sleeping.  CP
alleges the employee sued R for photographing her without her consent and she got her job back.

# GRIEVANCE FORM
## SEIU HEALTHCARE ILLINOIS/INDIANA
### 2229 S HALSTED
### CHICAGO, ILLINOIS 60608
Telephone: 312.980.9000 FAX: 312-784-3179

DATE
9/9/14

NAME OF EMPLOYER  Loretto Hospital

Employee Name  John Tucker           Employee I.D. # _____

Job Classification  MHS               Home Phone # _____

Immediate Supervisor  Jerome          Department Name/Area _____

Union Steward/Rep.  Jeanene Johnson    Steward/Reps. _____
                    Sheree Beech       Work Phone # _____

Nature of Grievance (include dates)  John Tucker was terminated
without Just cause

_____

_____

_____

Article and/or Rule Violated _____

Remedy Sought  MADE whole

_____

Date Answered at Step 1 _____   Supervisor _____

**STEP II**

Date Submitted _____           Employee Signature _____

_____       Steward Signature _____

Answer Step II

_____

_____

_____

_____

Date Answered _____            Dept. Head Signature _____

**STEP III**

Date Referred to Step III _____   Steward Signature _____

Received _____                 Union Rep. Signature _____

_____



## Note to Management:
# Loretto Is A Union Shop!

O ver the past few months, Loretto management has NOT been following our Union Contract! We understand that we have new management, but we need them to understand that this is a Union facility and it is their responsibility to learn how to work with us.

Some of the most common practices that have repeatedly been abused time and time again are as follows:

- Low census: Not following the order of retention by seniority by shift. This is basic language in a union contract. Abiding by this language is something that takes little effort to do.

- Union workers being low censused so that non-union employees can do their work is unacceptable.

Let management know that you want them to abide by our contract.



1) E.E.O.C REPRESENTATIVE HANDLING THE MATTER

MRS VICTORIA SHEALEY
TEL 312) 869-8079

Email - Victoria.Shealey @ EEOC.GOV.

please Note: - Mrs Shealey Want me to Send her an email Before Wednesday 1/20/15 requesting for the right to Sue document

Failing to request the right to Sue document the matter will proceed to EEOC Management for delision making.

2) HEAD OF THE LORETTO HOSPITAL / MENTAL HEALTH SPECIALIST UNION is

MISS BETH
TEL 312) 617-7905. For more information about the union, please Contact miss Beth on the above telephone number

3J   UNION STEWART / UNION REPRESENTATIV.

AT LORETTO HOSPITAL AND WHO FILED

THE GRIEVANCE WITH THE HUMAN

RESOURCE AT LORETTO HOSPITAL IS

MISS JENNING

TEL 773) 704 - 7045. for Copy

of The gerevance and for more information

about people sleeping on the job and still

work for Loretto, please Contact Jenning

at the above number.

4J   PRECEDENT CASES OF PEOPLE

CAUGHT SLEEPING ON THE JOB

a) NICOL TULLOCK - MENTAL HEALTH

SPECIALIST whose picture was taken and

Sued Loretto Hospital for $200,000. an

ad for Comment, please Contact NICOL's

attorney, MISS Jemelle's on TEL No 312)252

- 3085.

b) John Kelly, mental Health specialist

caught on Camera and was see by nurse

Juliana is stil worky

#1 a regisered nurse on EP was Caught

5th floor Employees at
Loretto Hospital (still working)

DAN the MONITOR Tech
got Caught Sleeping.

Sabring Monitor Tech
got Caught Sleeping.

Tammy Norwood the
CNA got Caught Sleeping

Kenya ~~the~~ a nurse got
Caught Sleeping

Laura a nurse got Caught
Sleeping

mafah a nurse got Caught
l Doroship

Loretto Hospital

DR SONIA MEHTA

) EXECUTIVE
DIRECTOR | OFFICE —
TEL 773) 854 - 5000

NOTE:— A letter of complaint was sent
to her by Certified mail.

HUMAN RESOURCE DIRECTOR
2) Formely :— Amy.
I did complained to her on 9/18/2014
at 10:30 Am. but left facility on
9/19/2014. She promised to call for
a meeting between ~~between~~ myself
and Administration but She did not.
She however told me that "Loretto
do not have a policy that Says
Supervisors can take employees picture
or photo with their Personel Cellphs
For comment, you can reech Amy
resource office

On. Tel Nr.- 773) 854 -5042

3)      Behavior Department's Director
        Mr Jerome phillips,
    — Mr Jerome phillips did not
he signed my discharged paper but
he advised me to pursued the matter
because there were some issues
involved in my termination that were
not cleared enough.
To reach him for comment, you dial
    773) 854 - 5320 and ask to be
connected with Jerome phillips.


4) Nurse manager for three West
    → MR Olaniyi Alli - Balogun
( a Nigerian ) processed my picture on
the internet without my permission,
took the picture to mr Jerome phillips
and push for my termination. At the
meeting for my termination, Mr Olaniyi
will the committee that Supervisors have

The right to take employees pictures
while discharging their Supervisory
duties. I then asked him for a copy
of Loretto Hospital policy where it stipulate
that Supervisors can take employees
photos or pictures even when it interfers
with the right to Privacy. He was unable
to answer further and he did not give
me the policy. For comment, you
can reach mr Alaniyi Ali Balogun
or Tel NO:- 773) 854 - 5320 or
773) 854 - 5310.

5) Nursing Supervisor:-
mrs Juliana Ndaywa - This is a
nigerian Lady who took my picture with
her cellphone on 9/8/14 at 03:45 Am
without my consent, feah it to her
nigerian brother, Mr. Alaniyi Ali Balogun,
nurse Manager who then use the picture
to ancrimate me and had me terminated
I Strongly believe that a kind of
Conspiracy resulted in my termination
between Juliana Ndaywa and mr

Juliana, She was a nurse on the 5TH
who became nursing Supervisor. And according
to our Union Steward, Mrs Jenning, she
told me that Juliana herself used to
sleep when she was a floor nurse. And
ever since, she became nurse Supervisor,
she always catch people sleeping
on the job but she never say a word
to them, maybe, because they are
born Americans. One guy, an employee
called John Kelly was caught by Juliana
after a nurse called Jessica reported to
nursing office that John Kelly was
sleeping right under the camera
but he was not terminated and is
still working. And according to Jenning,
Juliana did catch two other employees
one in the crisis office/Emmerly rata
and the other on three west in the
back office sleeping but she did not
discipline these people. For further
comment, you may recall :—
    Juliana Ndaywe on Tel 773) 854 —
    5208. and Mrs Jenning on Tel

No:— 773) 704-7045. Mrs Jenney
will give you names of people that were
caught sleeping and not terminated and
are still working just because They are
Americans.

6] If you look onto The Hospital
camera, you will surely find employees
sleeping under the Camera while in
Hallways, day room and nurses station.
This is a common practice at Loretto
Hospital and Juliane being a nursing
supervisor will see these things and
turned a blind eye to them. Names
of some people sleep most often while
at work are    1) John Kelly mHS.

2] Jacque Knlonzo, mHS

3y Maurice        mHS

4y Ruth  — RN

5) Ola  — RN

6y Emmanuel Nduka mHS

7) Beyond — mHS

8) Rotieme .O. — mHS.

. Wate Presson  mHS

I do not want to implicate my co-workers
so please use these names only for informational
purpose.

7] To find out more about people
sleeping on Loretto Job, please contact
The following people: —

*1] Mrs Jenny, Tel No 773) 704 - 7045

*2) Emmanuel — Tel 708) 469 - 7404

*3] Eric — Tel 312) 607 - 9111

*4] Rottimi — Tel (847) 490 - 0514

*5] Samuel Banda — Tel 1-574-383-2211

6] Samuke — Tel 1-312) 388 - 8835

*7) Timmy Jones - Tel 773) 225 - 6135

8] Lynda Robinson, Tel 773) 449 - 8167

9] Bob Hunt — Tel 847) 626 - 8398

*10] Harold, RH — Tel 773) 854 - 5320

11 Jessica, RH — Tel 773) 854 - 5310.

12 Margarett Tel 773) 317 - 8447

So taking into account all the above,
I now feel Loretto Policy singled me
out by letting their Supervisor takes
my picture with her cell phone, processed
it on the internet, used it as evidence
against me and have me terminated
while on the other hand, when she see
the Americans sleepy, she don't take
their pictures or have them terminated.
So, by Loretto singlyng me out base
on my origin, she has discriminated
me and has also invaded my right to
privacy which inturn interfers with my
4th 5th and 9th Amendment rights.
So, I want the EEOC investigate this
matter.

Thank you

Jean P Tercy

above. This fee does not extend to a second trial and/or appeal proceedings and does not include any investigation, administrative, medical or litigation costs. Additional fees to be agreed upon by the parties shall cover any second trial or appeal.

5. Client is further advised that the fee based upon an hourly rate and/or the fee set forth in paragraph 1 above, may be greater than the recovery, if any, by the client. Client shall acknowledge agreement to this by his/her initials, here. _____ .

6. Client will pay all costs in full when billed. Costs include all out-of-pockets expenses advanced by attorneys, including but not limited to, all litigation, administrative and investigation costs. Online research costs are billed at a rate of $ 1.50.00 per minute, per online session. Client hereby agrees that attorneys can expend whatever out-of-pocket costs as are reasonably necessary to litigate the case. This includes, without limitation, the following: postage, copy costs (.25 per page), fax, online research, long distance telephone calls, all court fees, deposition costs, expert fees and all other litigation expenses. Client is responsible to attorneys for any costs incurred in the litigation of the cause of action regardless of the outcome of the action. Further, client is hereby put on notice that if he/she loses the case he/she may be responsible for the opposing party's fee and costs.

**LIEN**
7. Attorneys shall have a lien upon the cause of action, any judgment obtained and the proceeds of any recovery for their fee and for any costs and expenses, which they have advanced in client's claim. Attorneys may withdraw at any time legally permissible upon written notice.

**SETTLEMENT**
8. Client and attorneys further agree that they will make no settlement without the approval of one another. Client is advised that the time spent on cases can be extensive, and that the client's attempt or desire to settle a case for less than its true value would cause the attorneys to take an unnecessary monetary loss on a case. Thus, the attorneys reserve the right to refuse to settle a case where it is not in the best interests of both the attorneys and the client.

9. It is agreed that attorneys have made no guarantee regarding the success of any claim or causes of action for which they are retained. Plaintiff has been advised and agrees that a rough initial estimate of the total value of the guess ranges from _30k_ to _100k_ , although there is no guarantee of this. Client acknowledges and agrees to this by his/her initials here. _____

**MISCELLANEOUS**
10. Any related matters not expressly covered by this agreement such as defense of a counter-claim may be at an additional fee as agreed upon by client and attorneys.

11. Should client discharge attorneys, he/she agrees to reimburse attorneys immediately for all costs advanced and to pay attorneys a fee for the work they performed based on the relative amount of that work compared to any subsequent work done by others in processing the case to completion. This method will be used to measure the reasonable value of services provided. If

attorneys have obtained an offer of settlement, the fee shall be, at the time of such offer as calculated in paragraph 1 above.

12. In the event that attorneys settle client's claim and client cannot be reached by telephone or through the mails, client hereby grants to attorneys a Special Power of Attorney to sign his or her name to any release, draft, authorization or any other document issued or which may be necessary to settle client's claim. Client's name signed by attorneys shall have the same force and effect as if signed by client himself or herself. Under such circumstances, attorneys agree to maintain a copy of the draft or check in payment of any settlement and also to maintain client's share of the proceeds of the settlement in the attorney's Trust Account. Client hereby agrees to keep attorneys apprised of his/her current address and telephone number at all times.

13. The client acknowledges that attorney _____ has referred this case and is entitled to a referral fee. This will not impact the fee paid by client.

14. Client acknowledges that he or she fully understands the terms and conditions as contained in this agreement and receipt of a copy hereof.

DATED ___1/19/2015___                        _____
                                                        CLIENT

DATED ___1/19/15___                          _____
                                                 ED FOX & ASSOCIATES

# LORETTO HOSPITAL
## DISCIPLINARY ACTION FORM

Employee Name  **John Tucker**          Position/Title **Mental Health Specialist**

Department **Behavioral Health**          Date **June 13, 2013**

Disciplinary action:

x☐  First Written reprimand          Suspension without pay ☐

☐  Second Written reprimand          Discharge                        ☐

**Description of incident: (describe the problem with relevant dates & details; identify the policy, rule or standard violated.)**

Failure to comply with Tardiness Policy #2447: ***"Any unexcused arrival at work seven (7) minutes past the established start of shift shall constitute an occurrence of tardiness." You were tardy*** 5/2, 5/5, 5/9, 5/13, 5/16, 5/17, 5/23, 5/24/13.

**Identify consequences of repeat violations or continued poor performance:**

Progressive discipline including second reprimand, suspension and discharge.

**List previous disciplinary actions and dates:**

**Employee Comments:**
My lateness is due to circumstances beyond my control. On the occasion I was involved in an accident - the bus was hit by another truck. And in another occasion, my family car broke ...

Employee's signature below indicates the above disciplinary action was discussed with the employee and a copy of the same was given to the employee.

| | | | |
|---|---|---|---|
| _John P Tucker_  6/20/13 | | | |
| **Employee Signature**          Date | | **Department Manager**          Date | |
| _Sandi_  6/20/13 | | | |
| **Supervisor's Signature**          Date | | **Administration**          Date | |
| | | | |
| **Witness** (required in the event employee refuses to sign)          Date | | **Human Resources**          Date | |

Human Resources Disciplinary Form

John Tucker
1325 Brummel Street
Evanston IL 60202
Tel: 224) 420-9309
21st June, 2013

Kasaundra Harold
Manager Behavioral Department
Lorretto Hospital
645 South Central
Chicago IL

Dear Kasaundra,

### A Letter of Request for my records

Per our conversation yesterday together with Mrs. Jessica Philps Director, you and my self, I am here by requesting for copies of my record as follows: 1) a copy of the very letter or write up which you presented to me about me being absent from work three times in the month of May 2013 .That write up, I believed was taken away by Mrs. Jessica Philps for amendment.2) Print out of my time and attendance sheet ( punching in and out for the month of May 2013) 3) The letter of complained which was given to you by Mr. Josh, registered nurse about my self and Samuel Banda .I strongly believe a copy of that letter is in my file. 4) Any other write-ups or complain letter that you may have in my file whether it is formal or informal

I need these information only for record purpose and nothing else. Please, do not have any fear or suspicion over me requesting for my record. Thus, under the State of Illinois Administrative law commonly known as rule 147, employees have the right to request for their file provided the give their Administrators advance notice in writing. I look forward to hearing from you in due course

Sincerely,

John Tucker

Mental health specialist

Subscribed and sworn to before me
this 2st day of June 20 13
at Chicago, County of Cook, State of Illinois.

Notary Public

"OFFICIAL SEAL"
ELIZABETH OGUNREMI
Notary Public, State of Illinois
My Commission Expires Jan. 25, 2015
Commission No. 744205

NorthShore University HealthSystem
Medical Group Department of Orthopaedics
1000 Central Street Suite 880
Evanston, IL 60201
847-570-2825

Merchant ID: 5423478                    Term ID: 001

## Sale - Approved

Date: 01/20/15                           Time: 16:01:58
Card Type: Visa
Entry Method: Swiped
Card #: XXXXXXXXXXXX6112

Invoice #:        10
Approval Code:  080116
Customer Ref:   200437812

## Amount              **$50.00**

I agree to pay the above total amount according to the card
issuer agreement. (Merchant agreement if credit voucher)

After your visit, please ask your
provider for the
After Visit Summary (AVS)

Customer Copy

Receipt Number:   9820440
Date:       01/20/2015

COPAY RECEIPT

NORTHSHORE UNIVERSITY HEALTHSYSTEM
1000 Central St  Suite 880
EVANSTON, IL 60201
Phone       847-570-2570

Patient:
Guarantor:          TUCKER, JOHN
Pmt Source:         TUCKER, JOHN
Ref/Check           Credit Card
                    080116

Provider: HENTATI, AFIF
Acct #:    500762
Amount:    $50.00

Payment Received By: LAS

Term ID:        prd

Cashier Signature:

Tue Jan 20, 2015  3:02 PM



**Mohammed Sajjad, MD**
*Board Certified in Family Medicine*
*Mon, Tue, Thur: 9am - 6pm | Fri: 8:30am - 12:30pm*
*Sat, Sun: 9am - 3pm | Wed: Closed*

2017 S. Western Ave.
Chicago, IL 60608

Ph: (773) 847-7878
Fax: (773) 847-7879

**Walk-ins Welcome**

Name: John Tucker | DOB: 3/3/1959 | MRN: 200437812 | PCP: Ayman M Jabr, MD

## Sent Items

These are the messages that you sent to your physician office. You can view the complete text by clicking on the message.

**Messages in bold have not yet been read.**

| Subject | To | Sent |
| --- | --- | --- |
| Medication Renewal Request | AFIF HENTATI, MD | 02/18/2015 3:52 PM |

e:Vision Portal

Student Reports and Processes page

## Programme of Study Information 2013/4

**MSc Psychiatry (eLearning):** You have completed Confirmation of Programme of Study for 2014/5.

Academic Details for Current Programme Year 2014/5

Click to view information about School Enrolment / Induction - Medicine

## Transfer Request Facility

This facility can be used to request a Programme Transfer to take effect IMMEDIATELY from MSc Psychiatry (eLearning) to a different Programme. Academic advice and support MUST be sought from the relevant School(s) prior to submitting a request for a transfer.

Request an IMMEDIATE Programme Transfer

This facility can be also be used to request a DEFERRED Programme Transfer, i.e. to WITHDRAW from your current Programme NOW and to start a new Programme later in the current academic year (2014/5), or to defer to the next academic year (2015/6). Academic advice and support MUST be sought from the relevant School(s) prior to submitting a request for a transfer.

Request an DEFERRED Programme Transfer

## Personal & Contact Details

**Permanent Home Address:**
16 Sumaila Street
Kenema
Sierra Leone
West-Africa
N/A
Tel: 011-232-77-20-9310
Mobile: 1-872--239-9031
E-mail:
SLeoneVendingCupCo@yahoo.com

**Term-Time Address:**
1325 Brummel Street
Evanston
Illinois

Apologies, but due to very high demand, applications are now closed for the Autumn Semester except for those students permitted to select a free-standing module. Application for Spring Semester will open late in November. Please see Languages for all – Independent self-study for alternative options.

## Register to vote

Before you can vote in UK elections or referendums you need to register to vote. You are eligible to register to vote if you are 16 or over and British or a national of an EU or Commonwealth country.

Students are eligible to be registered at both home and term-time addresses. You can vote once where you happen to be on voting day.

You can register to vote by following this link:
https://www.gov.uk/register-to-vote

You will need your National Insurance Number to register (if you have one). If you do not have your National Insurance Number you can register to vote on paper in the Students' Union.

Click here to remove this message

## Mobility

View Mobility Data

## University Residences

Access the University Residences booking and management system by clicking the link to the right.

University Residences

If you have accepted a room in University residences you will need to complete an online induction before your arrival in Cardiff. Click the link on the right.

University Residences Induction

Task Questions

Queries: studentrecords@cf.ac.uk, 029 2087 6211. [Ref: 1352828_86626877 AMT6 STEP0130]

EXIT

JOHN PHILLIP TUCKER

ACADEMIC HISTORY - MSC PSYCHIATRY (ELEARNING)

MSc Psychiatry (eLearning)   (PPMSPSIB)

| | | |
|---|---|---|
| Student Code: | 1352828 | Student Name: John Phillip Tucker |
| Start Date: | 23/Sep/2013 | End Date: |
| Status on Programme: | Current- Year: 2 | Programme Result: |

MODULE RESULTS

| Acad Yr | Semester | Mod Code | Module Name | Credits | Agreed Mark | Agreed Grade | Result | Attempt no. | Date |
|---|---|---|---|---|---|---|---|---|---|
| 2013/4 | Autumn | MET450 | Organic Illness And Substance Misuse | 30 | 50 | PM | P | 1 | 08/Jul/2014 |
| 2013/4 | Spring | MET451 | Psychosis And Mood Disorders | 30 | 50 | PM | P | 1 | 08/Jul/2014 |

MODULE AND ASSESSMENT RESULTS

Module results that have been confirmed by an Examining Board are shown below.

Note:
- where a module has been re-sat that has previously been failed, the overall module result will be capped at a pass mark;
- accepted Extenuating Circumstances are indicated by a letter 'A' or 'B' after the assessment mark;
- NYA = Not yet available;
- grade only assessments will show a mark of 100 for a pass or 0 for a fail.

For a list of assessment grades and module grades and their meanings, please click here

If you think the data may be incorrect then please contact your School.

| Mod Code | Module Name | Start Year | Credits | Level | Mod Mark | Mod Grade | Attempt No |
|---|---|---|---|---|---|---|---|
| MET450 | Organic Illness and Substance Misuse | 2013/4 | 30 | L7 | 50 | PM | 1 |

| Assessment Title | | | | | | Weighting | Mark / Grade | Assessment Status |
|---|---|---|---|---|---|---|---|---|
| | | | | | | 70% | 42 / F | Confirmed |

Organic - Final Exam

Task Questions

| | | | | | | |
|---|---|---|---|---|---|---|
| Organic - Virtual Patient 1 | | | | 5% | 45 / F | Confirmed |
| Organic - Virtual Patient 2 | | | | 5% | 53 / P | Confirmed |
| Organic - Virtual Patient 3 | | | | 5% | 65 / P | Confirmed |
| Organic - Contribution to Discussions | | | | 5% | 100 / P | Confirmed |
| Organic - Creation of a Vitual Patient | | | | 10% | 70 / P | Confirmed |

| Mod Code | Module Name | Start Year | Credits | Level | Mod Mark | Mod Grade | Attempt No |
|---|---|---|---|---|---|---|---|
| MET451 | Psychosis and Mood Disorders | 2013/4 | 30 | L7 | 50 | PM | 1 |

| Assessment Title | Weighting | Mark / Grade | Assessment Status |
|---|---|---|---|
| PSYCHOSIS AND MOOD DISORDERS - Final Exam | 70% | 45 / F | Confirmed |
| Psychosis and Mood Disorders - Virtual Patient 1 | 5% | 43 / F | Confirmed |
| PSYCHOSIS AND MOOD DISORDERS Virtual Patient 2 | 5% | 41 / F | Confirmed |
| PSYCHOSIS AND MOOD DISORDERS - Virtual Patient 3 | 5% | 41 / F | Confirmed |
| PSYCHOSIS AND MOOD DISORDERS - Creation of a Virtual Patient | 10% | 69 / P | Confirmed |
| PSYCHOSIS AND MOOD DISORDERS - Contribution to Discussions | 5% | 100 / P | Confirmed |

View Correspondence for John Phillip Tucker
The View Correspondence link will open in a new window. Close the window to return to this page.

Please choose your next action then click on the 'Next' button.

- ◯ **Personal and Contact Details**
- ◯ **Current Programme Year**
- ◯ **Exit**

Next

United States Of America
IL 60202
Tel: 1-224-420-9309
E-mail:TuckerJP@cardiff.ac.uk

Update Address, Phone Number or Home Email

Statement of Personal & Contact Details

Update Emergency Contact Details

Update Name or Title

Update Date of Birth

Submit a query regarding your Personal Details

## Language for correspondence / Iaith gohebu

Language for correspondence / Iaith gohebu

## Academic Details

Statement of Academic History (Module Results)

Apply for an Interruption of Study

Notification of Withdrawal from Programme of Study

Submit a query regarding your Academic Details

## Requests For Proof of Enrolment etc. Letters

Request a Proof of Enrolment Status Letter

Request a Bank Letter

Request a Council Tax Certificate

## Correspondence from Cardiff University (from Mar08)

View Correspondence

## Finance Information

Statement of Your Tuition Fee and Other Debts

Make a Debt Payment via Credit / Debit Card

Set up Direct Debit Mandate

Print a Receipt for a Tuition Fee Payment

Send an Email query to Finance



# UNIVERSITY OF ILLINOIS

By authority of the Board of Trustees of the

and upon recommendation of the Senate

at Chicago

## John Phillip Tucker

has been admitted to the Degree of

## Bachelor of Arts in Liberal Arts and Sciences

and is entitled to all rights and honors thereto appertaining.

Witness the Seal of the University and the signatures of its Officers

this seventeenth day of March, nineteen hundred and ninety-one.

President of the University

President of the Board of Trustees

Michele M. Thompson
Secretary of the Board of Trustees

James J. Stukel
Chancellor



UNIVERSITY OF LOND
External System

Stewart House, 32 Russell Squa
London WC1B 5j

## Notification of Results

Session 2009 - 2010

Mr John Philip TUCKER
1325 Brummel Street
Evanston
Illinois 60201
UNITED STATES

Candidate no. 34537          SRN: 927046912

Field of Study:  LLB Graduate Entry - Route A Level I

Exam Centre: USA/CCTC/ILLINOIS/35bil

| Course | | Mark | Result |
|---|---|---|---|
| 91 265 0010 | Criminal Law | 34 | Fail |
| 91 265 0020 | Public Law | 33 | Fail |
| 91 265 0031 | Common Law Reasoning and Institutions (New Syllabus) | 50 | Pass |
| 91 265 0040 | Elements of the Law of Contract | 46 | Pass |
| 91 265 99GA | Graduate Entry Route A Level I - Overall Result (June) | | Fail (November) |

Notes:   The grades and marks shown on this document are provided for the personal information of the candidate.

The final results for each candidate are determined not only on the basis of the grades or marks awarded to the candidate in the individual elements of the examination, but also
on the assessment by the examiners of the overall performance of the candidate.

Various factors may be taken into account in arriving at the final result, such as the distribution of the marks awarded to the candidate over the various elements, the strength on
weakness shown in certain elements in relation to that in other elements, and any special difficulties known to have been experienced by the candidate at the time of the
examination (e.g. illness).

- email or phone

**contact name:**
- Mr. Parker

**contact by phone:**
- 312-214-4993

**reply by email:**
- 6cshc-4849357890@job.craigslist.org

# MENTAL HEALTH TECHNICIANS WANTED $20.00 per hr

compensation: **$20.00 per hr**

part-time

Mental Health Technician / Psych Tech

**POSITION SUMMARY:**
The Psych Tech will collaborate and assist in patient care with all members of the health care team with the coordination of the Registered Nurse (RN).
Provides direct patient care in the acute care inpatient behavioral hospital setting.
Gives a basic level of general behavioral and psychiatric care to mentally or developmentally disabled patients/youths.
Conduct daily clinical rounds and monitoring of patients/youths with signs and symptoms of mental illness.
Communicates with Charge RN and co-workers as appropriate about changes in patient's clinical condition including vital signs, behavioral and physical symptomatology. Is able to respond quickly to changes in patient's status. Is able to perform basic nursing functions under direction of Charge nurse.
1st 2nd & 3rd Shifts Available

**FUNCTIONAL RESPONSIBILITIES:**
Performs basic patient care activities for adolescent, adult, and geriatric patients as delegated by the RN.

**QUALIFICATIONS:**
1. Bachelor's Degree in a Social Science or health related field required.
2. Previous experience working with mental health population required.
3. Effective verbal and written communication skills.
4. Current CPR card, & Current CPI card, REQUIRED!!!

**WORKING CONDITIONS:**
Unpredictable environment with wide variations in the types of patients, acuity levels, times of admissions/discharges and the number of patients/health care team members.
Works in a standard patient care area with varying conditions.

**Form W-2 Wage and Tax Statement 2014**

c Employer's name, address, and ZIP code
LORETTO HOSPITAL
645 S. CENTRAL AVE
CHICAGO, IL 60644

b Employer identification number (EIN) 36-2200248

a Employee's social security number 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

e Employee's name, address, and ZIP code
JOHN P.
1325 BRUMMEL
EVANSTON IL 60201
TUCKER

7 Social security tips
8 Allocated tips
9
10 Dependent care benefits
11 Nonqualified plans
12a E 1528.73
12b
12c
12d
13 Statutory employee / Retirement plan / Third-party sick pay
14 Other

1 Wages, tips, other compensation 53901.89
2 Federal income tax withheld 5387.45
3 Social security wages 53901.89
4 Social security tax withheld 3341.89
5 Medicare wages and tips 53901.89
6 Medicare tax withheld 781.57

15 State IL  Employer's state ID number 36-2200248
16 State wages, tips, etc. 52383.16
17 State income tax 2456.34
18 Local wages, tips, etc.
19 Local income tax
20 Locality name

OMB No. 1545-0008

Copy 1 — To Be Filed With Employer's State, City, or Local Income Tax Return.

---

**Form W-2 Wage and Tax Statement 2014**

c Employer's name, address, and ZIP code
LORETTO HOSPITAL
645 S. CENTRAL AVE
CHICAGO, IL 60644

b Employer identification number (EIN) 36-2200248

a Employee's social security number 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

e Employee's name, address, and ZIP code
JOHN P.
1325 BRUMMEL
EVANSTON IL 60201
TUCKER

7 Social security tips
8 Allocated tips
9
10 Dependent care benefits
11 Nonqualified plans
12a E 1528.73
12b
12c
12d
13 Statutory employee / Retirement plan / Third-party sick pay
14 Other

1 Wages, tips, other compensation 53901.89
2 Federal income tax withheld 5387.45
3 Social security wages 53901.89
4 Social security tax withheld 3341.89
5 Medicare wages and tips 53901.89
6 Medicare tax withheld 781.57

15 State IL  Employer's state ID number 36-2200248
16 State wages, tips, etc. 52383.16
17 State income tax 2456.34
18 Local wages, tips, etc.
19 Local income tax
20 Locality name

OMB No. 1545-0008